ORIGINAL

Fee Paid

SJ

1   JEFFREY M. FORSTER (SBN 50519)
    160 West Santa Clara Street, Suite 1100
2   San Jose, CA 95113
    Telephone: (408) 977-3137
3   Facsimile: (408) 977-3141
    Email:    jforstr@pacbell.net
4                                          ADR

5   STEVEN R. LEVY   (State Bar No. 103164)
    17670 Woodland Avenue
6   Morgan Hill, CA 95037
    Telephone: (408) 274-7000
7   Facsimile: (408) 274-9000          E-FILING
    Email:    slevy@bigfoot.com

8   Attorneys for Plaintiffs

9                UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                    SAN JOSE DIVISION

12              C08  03535            PVT

13  YU-SZE YEN; CLARICE ARNE; MIKE       CASE NO.:
    BAKER; JUAN BETTAGLIO AND
14  BRENDA BETTAGLIO, individually and   COMPLAINT FOR:
    as Trustees of the Bettaglio Family Trust;   (1) VIOLATION OF SECTION 1962(A)
15  MIKE BROGDAN AND RENEE               OF THE RACKETEERING
    BROGDON, individually and as Trustees   INFLUENCED AND CORRUPT
16  of the Brogdon Family Trust; DIANE   ORGANIZATION ACT OF 1970
    BRYSON; JAMES BRYSON; WAYNE          ("RICO");
17  CANTO AND CANDISE CANTO; FRANK       (2) VIOLATION OF SECTION 1962(C)
    CARBAJAL AND MEGAN CARBAJAL;         OF THE RICO ACT;
18  KWEI CHOONG; JASON COLYAR; JIM       (3) VIOLATION OF SECTION 1962(D)
    COATES; JKAT PROPERTIES, LLC, a      OF THE RICO ACT;
19  California limited liability company; MARK   (4) VIOLATION OF SECTION 10B AND
    DELMAN AND KATHLEEN DELMAN;          RULE 10B-5 OF THE SECURITIES
20  TIM GALE AND LORI GALE; ERIC         EXCHANGE ACT OF 1934;
    GOLD; JACK GREER AND DIANE           (5) VIOLATION OF SECTION 12(A) OF
21  GREER; JERRY HUGHES AND              THE SECURITIES ACT OF 1933;
    RHONDA HUGHES; JEFF LAWRENCE;        (6) VIOLATION OF CALIFORNIA
22  TINA McCRAW; BRUCE MEEKER AND        BUSINESS AND PROFESSIONS CODE
    DEBORAH MEEKER; MATT ROGERS          SECTION 17200, ET SEQ.;
23  AND JULIE ROGERS; DAVID SAMS;        (7) BREACH OF FIDUCIARY DUTY;
    CYNTHIA SEMENOFF; BRIAN STARR        (8) BREACH OF CONTRACT;
24  AND DEBRA STARR; JEFFREY             (9) BREACH OF THE IMPLIED
    STEELE; NICOLE STEELE; LAURA         COVENANT OF GOOD FAITH AND
25  STEELE; LEN AND JAN TURNER;          FAIR DEALING;
    IRVIN URBANSKI AND YOLANDA           (10) NEGLIGENT
26  URBANSKI; KATHY URY; MARK VAN        MISREPRESENTATION;
    BUHLER; BOB WINGER AND NANCY         (11) INTENTIONAL
27  WINGER; JAMES WONG; CHARLIN          MISREPRESENTATION;
    YEN,                                 (12) CONSPIRACY;
28                    Plaintiffs,

Complaint, *Yu-Sze Yen, et al. v. Buchholz, et al.*          Page 1 of 67

v.

RONALD BUCHHOLZ; CHARISE
FISCHER, formerly known and a.k.a.,
Charise Buchholz; SOLOMON CAPITAL,
LLC, a Nevada limited liability company;
RNC HOLDINGS, LLC, a Nevada limited
liability company; LUXURY
DEVELOPMENT FUND, LLC, a
Delaware limited liability company;
EQUITY ENTERPRISES, INC., a
California corporation; EQUITY
ENTERPRISES-NEVADA, INC., a
Nevada corporation; EQUITY
ENTERPRISE MANAGEMENT, INC.;
ALABANZA, INC., formerly a California
corporation; JONATHON VENTO;
GRACE CAPITAL, LLC dba GRACE
COMMUNITIES, an Arizona limited
liability company; DONALD ZELEZNAK;
ZELEZNAK PROPERTY
MANAGEMENT, LLC dba KELLER
WILLIAMS REALTY, an Arizona limited
liability company; KELLER WILLIAMS
REALTY, INC., a Texas corporation;
Z LOFTS, LLC, an Arizona limited liability
company; PASTOR WILLIAM E.
BUCHHOLZ; FAMILY COMMUNITY
CHURCH, a California corporate entity;
RDB DEVELOPMENT, LLC, a Nevada
limited liability company; ZELTOR, LLC,
a Nevada limited liability company;
VENTO INVESTMENTS, LLC, an
Arizona limited liability company; GUY
BERRY; VENTO FAMILY TRUST; and
DOES 1-100, inclusive,

Defendants.

**(13) ALTER EGO;**

**(14) FRAUD;**
**(15) CONSTRUCTIVE FRAUD;**
**(16) RECISSION BASED ON MATERIAL
MISREPRESENTATION AND
SECURITIES TRANSACTION
PURSUANT TO CALIFORNIA
CORPORATIONS CODE SECTIONS
25501 AND 25401;**
**(17) JOINT AND SEVERAL LIABILITY
OF MANAGEMENT PRINCIPALS AND
MATERIALLY AIDING PERSONNEL
PURSUANT TO CALIFORNIA
CORPORATIONS CODE SECTIONS
25501, 25401, and 25504;**
**(18) RESCISSION OF SALE OF
SECURITIES NOT QUALIFIED FOR
SALE AND RESTITUTION OF
CONSIDERATION PAID PURSUANT TO
CALIFORNIA CORPORATIONS CODE
SECTIONS 25503, 25102(F), AND
25110;**
**(19) JOINT AND SEVERAL LIABILITY
OF MANAGEMENT PRINCIPALS AND
MATERIALLY AIDING PERSONNEL
PURSUANT TO CALIFORNIA
CORPORATIONS CODE SECTIONS
25503, 25102(F), AND 25110;**
**(20) ACCOUNTING**

**JURY TRIAL DEMANDED**

COMES NOW, Plaintiffs YU-SZE YEN; CLARICE ARNE; MIKE BAKER; JUAN

BETTAGLIO AND BRENDA BETTAGLIO, INDIVIDUALLY AND AS TRUSTEES OF

THE BETTAGLIO FAMILY TRUST; MIKE BROGDAN AND RENEE BROGDON,

INDIVIDUALLY AND AS TRUSTEES OF THE BROGDON FAMILY TRUST; DIANE

BRYSON; JAMES BRYSON; WAYNE CANTO AND CANDISE CANTO; FRANK

CARBAJAL AND MEGAN CARBAJAL; KWEI CHOONG; JASON COLYAR; JIM

COATES; JKAT PROPERTIES, LLC, a California limited liability company; MARK

DELMAN AND KATHLEEN DELMAN; TIM GALE AND LORI GALE; ERIC GOLD; JACK

Complaint, *Yu-Sze Yen, et al. v. Buchholz, et al.*                    Page 2 of 67

GREER AND DIANE GREER; JERRY HUGHES AND RHONDA HUGHES; JEFF
LAWRENCE; TINA McCRAW; BRUCE MEEKER AND DEBORAH MEEKER; MATT
ROGERS AND JULIE ROGERS; DAVID SAMS; CYNTHIA SEMENOFF; BRIAN
STARR AND DEBRA STARR; JEFFREY STEELE; NICOLE STEELE; LAURA
STEELE; LEN AND JAN TURNER; IRVIN URBANSKI AND YOLANDA URBANSKI;
KATHY URY; MARK VAN BUHLER; BOB WINGER AND NANCY WINGER; JAMES
WONG; CHARLIN YEN; by and through their attorneys, and submit their Complaint
against Defendants RONALD BUCHHOLZ; CHARISE FISCHER, formerly known and
a.k.a., Charise Buchholz; SOLOMON CAPITAL, LLC, a Nevada limited liability
company; RNC HOLDINGS, LLC a Nevada limited liability company; LUXURY
DEVELOPMENT FUND, LLC, a Delaware limited liability company; EQUITY
ENTERPRISES, INC., a California corporation; EQUITY ENTERPRISES-NEVADA,
INC., a Nevada corporation; EQUITY ENTERPRISE MANAGEMENT, INC.;
ALABANZA, INC., formerly a California corporation; JONATHON VENTO; GRACE
CAPITAL, LLC, dba GRACE COMMUNITIES, a Arizona limited liability company;
DONALD ZELEZNAK;  ZELEZNAK PROPERTY MANAGEMENT, LLC dba KELLER
WILLIAMS REALTY, an Arizona limited liability company; KELLER WILLIAMS
REALTY, INC., a Texas corporation; Z LOFTS, LLC, an Arizona limited liability
company; PASTOR WILLIAM E. BUCHHOLZ; FAMILY COMMUNITY CHURCH, a
California corporate entity; RDB DEVELOPMENT, LLC, a Nevada limited liability
company; ZELTOR, LLC, a Nevada limited liability company; VENTO INVESTMENTS,
LLC, an Arizona limited liability company; GUY BERRY; VENTO FAMILY TRUST; and
DOES 1-100, inclusive, as follows.

## I. INTRODUCTION AND OVERVIEW OF THE ACTION

1.  This is an unlimited civil action brought under Sections 1962(a), 1962(c), and
1962(d) of the Racketeer Influenced & Corrupt Organizations Act of 1970 (18 U.S.C.

§§1961 et seq.) ("RICO"), Section 10b and Rule 10b-5 of the Securities Exchange Act of 1934 (17 C.F.R. § 240.10b-5) ("Rule 10b-5"), Section 12(a) of the Securities Act of 1933 (15 U.S.C. § 771(a)) ("Section 12(a)"), Section 17200 of the California Business & Professions Code, Breach of Fiduciary Duty, Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Negligent Misrepresentation, Intentional Misrepresentation, Fraud, Conspiracy, Alter Ego, Accounting, and California Corporations Code §§ 25401, 25501, 25503, 25110, and 25130.  On information and belief, Plaintiffs allege that Defendants created a real estate "Ponzi scheme" to defraud Plaintiff investors and other persons and entities of tens of millions of dollars. Generally, Defendants' culpable activities included, but were not limited to:

    a.    Misrepresentations that investors were paying fair market value for the land to be purchased by Defendants with Plaintiffs' investment capital;

    b.    Misrepresentations as to the return on investment and payments that would be received by Plaintiffs;

    c.    Misrepresentations as to the cost of land and properties purchased and re-sale directly and/or indirectly to Plaintiff investors at grossly inflated prices, at times making use of simultaneous escrows whereby property was purchased at prices less than that represented to investors and then immediately re-sold at grossly inflated and prices;

    d.    Knowingly presenting grossly incorrect, if not intentionally inflated appraisals to induce Plaintiff investors to invest;

    e.    Creating investor groups and inducing them to invest and then re-selling the same land/projects to other investor groups created by Defendants;

    f.    Engineering, creating and controlling entities as vehicles by misrepresentation to perpetrate the schemes;

    g.    Secretly, without disclosure, and fraudulently cross collateralizing projects and properties so as to dilute, if not destroy value;

    h.    Issuing promissory notes on the basis of purported security that did not

1    exist and/or wilfully failing to perfect security interests and/or issuing such

2    notes with terms and conditions that violated the rights of prior and/or other

3    investors;

4  i.    By secretly demanding kickbacks so as to dilute, if not destroy value;

5  J.    By taking extraordinary and unconscionable fees for services never

6    performed and without intention of ever performing services;

7  k.    By arranging for extraordinary and unconscionable fees and/or

8    commissions for  transactions;

9  l.    By intentionally over-leveraging property land by use of misrepresentations,

10    knowingly and grossly inaccurate appraisals and drawing from funds

11    acquired and diverting the funds acquired solely for personal gain and

12    without the intention of using the funds as indicated by their

13    representations;

14  m.    Misrepresentations as to the status and conditions of purported

15    development;

16  n.    Misrepresentations as to and active concealment of the true nature of the

17    inter-relationships between individuals and of entities created and

18    controlled by Defendants; and

19  o.    Misrepresentations as to and active concealment of the true nature of the

20    status of projects so as to pressure investors into additional capital

21    contributions under threat of the loss of initial investments.

22    2. Plaintiffs allege, on information belief, that Defendants' fraudulent Enterprise

23  or "Ponzi scheme" involved the "OPERATORS," RONALD BUCHHOLZ; CHARISE

24  FISCHER, formerly known and a.k.a., Charise Buchholz; SOLOMON CAPITAL, LLC, a

25  Nevada limited liability company; RNC HOLDINGS, LLC a Nevada limited liability

26  company; LUXURY DEVELOPMENT FUND, LLC, a Delaware limited liability company;

27  EQUITY ENTERPRISES, INC., a California corporation; EQUITY ENTERPRISES-

28  NEVADA, INC., a Nevada corporation; EQUITY ENTERPRISE MANAGEMENT, INC.;

1  ALABANZA, INC., formerly a California corporation; and the "FACILITATORS",

2  JONATHON VENTO; GRACE CAPITAL, LLC, dba GRACE COMMUNITIES, a Arizona

3  limited liability company; DONALD ZELEZNAK; Z LOFTS, LLC, an Arizona limited

4  liability company; who purchased the land in advance in preparation for later sale to the

5  investors at a highly inflated price, and the "AGENT AND BROKER" DONALD

6  ZELEZNAK and ZELEZNAK PROPERTY MANAGEMENT, LLC dba KELLER

7  WILLIAMS REALTY, an Arizona limited liability company, ; who facilitated the

8  transactions and received, in some instances, 20% (twenty percent) commission rates;

9  and  KELLER WILLIAMS REALTY, INC., a Texas corporation.

10      3.  Defendant, WILLIAM E. BUCHHOLZ, within the context of his position as

11  pastor of Defendant, FAMILY COMMUNITY CHURCH, a California corporate entity,

12  encouraged and solicited investment by some of the Plaintiffs who were members of the

13  church, at times doing so by promising that members who invested would be relieved or

14  their obligations to tithe to the church.

15      4.  Plaintiffs further allege, on information belief, that RDB DEVELOPMENT, LLC,

16  a Nevada limited liability company; and ZELTOR, LLC, a Nevada limited liability

17  company; and VENTO INVESTMENTS, LLC, an Arizona limited liability; and the

18  VENTO FAMILY TRUST were utilized by some defendants as vehicles to engage in

19  transactions in furtherance of the scheme.

20      5.  Plaintiffs further allege, on information belief including, but not limited to,

21  representation, that he acted in the capacity of providing legal and compliance service

22  to SOLOMON CAPITAL, Defendant, GUY BERRY, was a part of the scheme.

23      6.  The proceeds from this fraudulent Enterprise were then used by Defendants to

24  perpetrate further and additional fraud other investors.

25      7.  By this complaint, Plaintiffs seek rescission of the unqualified securities,

26  damages, and injunctive relief to enjoin Defendants from continuing to perpetrate the

27  fraudulent Enterprise or "Ponzi scheme" upon other putative investors or transferring

28  any assets acquired therefrom.

## II. JURISDICTION AND VENUE

8. This is an action for damages and a permanent injunction arising out of Defendants' violations of Sections 1962(a), 1962(c), and 1962(d) of the Racketeer Influenced and Corrupt Organizations Act of 1970 (18 U.S.C §§ 1961, et seq. ("RICO"); Section 10b and Rule 10b-5 of the Securities Exchange Act of 1934 (17 C.F.R. § 240.10b-5) ("Rule 10b-5"); Section 12(a) of the Securities Act of 1933 (15 U.S.C. § 771(a)) ("Section 12(a)"); Section 17200 of the California Business & Professions Code; Breach of Fiduciary Duty; Breach of Contract; Negligent Misrepresentation; Intentional Misrepresentation; Conspiracy; Fraud, Constructive Fraud; Alter Ego; California Corporations Code §§ 25401, 25501, 25503, 25110, and 25130; and Accounting.

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, federal question jurisdiction, based on the RICO, Rule 10b-5, and Section 12(a) claims in this action. This Court has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367 because the remaining state law claims are so related to the RICO, Rule 10b-5, and Section 12(a) claims that they form a part of the same case or controversy and fall within this Court's supplemental jurisdiction.

10. In addition, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), diversity of citizenship jurisdiction, because all Plaintiffs are citizens of different states than all Defendants, and because the amount in controversy exceeds $75,000.00.

11. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1965(a) because the Defendants transact affairs in this District; pursuant to 28 U.S.C. § 1965(b) because the ends of justice require that the parties residing in any other district be brought before this Court; pursuant to 28 U.S.C. §1291(b) because a substantial part of the events or omissions giving rise to this action occurred in this District; and/or pursuant to 28 U.S.C. § 1391(b) because one or more of the Defendants is subject to

1  personal jurisdiction in this District.

2      12.  The Court has jurisdiction over Defendants RONALD BUCHHOLZ and

3  CHARISE FISCHER because RONALD BUCHHOLZ and CHARISE FISCHER own

4  property in the State of California; did and/or still reside here at the time they committed

5  acts alleged; several of the companies they manage, including RDB DEVELOPMENT

6  and SOLOMON CAPITAL, did list and/or still list as their principal address in this

7  District; and committed acts in furtherance of the scheme within Santa Clara County.

8      13.  This Court has jurisdiction over Defendant, SOLOMON CAPITAL, LLC,

9  because it maintains an office or place of business in the State of California, it regularly

10  conducts business in the State of California, and it purposefully directed the activities

11  complained of herein toward residents of California and otherwise established contacts

12  with California in participating in and otherwise engaging in the Enterprise as described

13  herein.

14      14..  This Court has jurisdiction over Defendants,  RNC HOLDINGS, LLC,

15  LUXURY DEVELOPMENT FUND, LLC, EQUITY ENTERPRISES, INC., EQUITY

16  ENTERPRISES-NEVADA, INC., EQUITY ENTERPRISE MANAGEMENT, INC., and

17  ALABANZA, INC., because they conducted business in the State of California, and

18  purposefully directed the activities complained of herein toward residents of California

19  and otherwise established contacts with California in participating in and otherwise

20  engaging in the Enterprise as described herein.

21      15.  This Court has jurisdiction over Defendants, JONATHON VENTO; GRACE

22  CAPITAL, LLC, dba GRACE COMMUNITIES, DONALD ZELEZNAK, Z LOFTS, LLC,

23  ZELEZNAK PROPERTY MANAGEMENT, LLC dba KELLER WILLIAMS REALTY, and

24  KELLER WILLIAMS REALTY, INC., RDB DEVELOPMENT, LLC,  ZELTOR, LLC,

25  VENTO INVESTMENTS, LLC, and the VENTO FAMILY TRUST because they

26  conducted business in the State of California, and  purposefully directed the activities

27  complained of herein toward residents of California and otherwise established contacts

28  with California in participating in and otherwise engaging in the Enterprise as described

1  herein and because KELLER WILLIAMS REALTY, INC., maintains multiple places of

2  business in the State of California, is qualified to conduct business in California, and

3  regularly conducts business in the State of California.  .

4

5                              III.  PARTIES

6

7        16.  Plaintiffs purchased the unqualified securities and/or made loans, based on

8  the on the misrepresentations and active concealment of true facts by Defendants by

9  delivery of funds to one or more of the entity Defendants and/or entities controlled by

10  one or more of the Defendants and used in furtherance of the Enterprise after

11  enticement to provide funds based on purported real estate investment opportunities as

12  discussed herein.

13        17.  Plaintiff, Yu-Sze Yen, is an individual residing in Santa Clara County,

14  California, who delivered to $50,000.00 for investment in the project generally known as

15  St. Charles (Chicago) utilizing funds of an IRA of which she is beneficiary; delivered

16  funds utilizing an IRA of which she is beneficiary for investment in the project generally

17  known as Gilbert Office and Red Mountain (Arizona) and, after distribution(s) has a net

18  loss of investment in the sum of or approximate sum of $62,844.00; delivered

19  $200,000.00 for investment in the LUXURY DEVELOPMENT FUND utilizing funds of an

20  IRA of which she is beneficiary; and delivered $100,000.00 for investment in the project

21  involving the Erie Land Fund, LLC (Erie Phase 1) .

22        18.  Plaintiff, Clarice Arne, is an individual residing in Santa Clara County,

23  California, who, via an IRA of which she is the beneficiary, delivered $114,300.00 for

24  investment in the LUXURY DEVELOPMENT FUND.

25        19. Plaintiff, Mike Baker, is an individual residing in Santa Clara County,

26  California, who delivered $49,000.00 related to purported development of a

27  condominium project in the Chicago Metropolitan area as to which he has received

28  back $9,474.79 as distribution and delivered the sum of or approximate total sum of

1    $165,392.00 for investment in the LUXURY DEVELOPMENT FUND.

2       20.  Plaintiffs, Juan and Brenda Bettaglio, are individuals residing in Santa Clara

3    County, California, and are the trustees of the Bettaglio Family Trust, who delivered a

4    total sum of or approximate total sum of $665,000.00 to intended for investments of

5    $400,000.00 in the Project known as OC Chicago utilizing funds of the Bettaglio Family

6    Trust; $65,000.00 for investment in the LUXURY DEVELOPMENT FUND utilizing the

7    funds of an IRA of which Juan Bettaglio is the beneficiary; and $200,000.00 in the

8    investment vehicle referred to as SOLOMON TOWERS, LLC (in Arizona) utilizing the

9    funds of an IRA of which Juan Bettaglio is the beneficiary.

10      21.  Plaintiffs, Mike and Renee Brogdon, are  individuals residing in Santa Clara

11   County, California, who, in part being materially influenced by the urging and

12   statements of WILLIAM E. BUCHHOLZ and the position of trust and confidence existing

13   as a result of involvement with the FAMILY COMMUNITY CHURCH, delivered a total of

14   $100,000.00  intended for investment in the project sometimes  known as COLORADO

15   CONDO FUND utilizing funds that included $14,000.00 of an IRA of which Mike

16   Brogdon is the beneficiary and $19,500.00 of an IRA of which Renee Brogdon is a

17   beneficiary; and delivered a total of $50,075.67 ($7340.76 paid by check plus

18   $42735.00 by rolling over the proceeds of prior investment in the project known as

19   Longview) for investment in the project generally referred to as Red Mountain/Gilbert or

20   Gilbert Office in Arizona and of which $7,420.50 has been received back as distribution;

21   and delivered a total of $75,000.00 (including funds of the Brogdon Family Trust) for

22   investment in the project generally referred to as Patriot Courtyards of which

23   $19,737.00 has been received back as distribution; and  delivered a total of $75,000.00

24   (including funds of the Brogdon Family Trust) for investment in the project generally

25   referred to as Wailea of which received $47,776.52  has been received back as

26   distribution.

27      22.  Plaintiff, Diane Bryson, is an individual residing in Santa Clara County,

28   California, who delivered to a total of $34,853.00 intended for investment in the project

1  known as COLORADO CONDO FUND utilizing funds of an IRA of which she is the

2  beneficiary

3      23.  Plaintiff, James Bryson, is an individual residing in Santa Clara County,

4  California, who, in part being materially influenced by the urging and statements of

5  WILLIAM E. BUCHHOLZ and the position of trust and confidence existing as a result of

6  involvement with the FAMILY COMMUNITY CHURCH,  initially delivered to the sum of

7  $100,000.00 utilizing funds of an IRA of which he is the beneficiary and who, after

8  several distributions and reinvestment, has a net loss of investment in the sum of or

9  approximate sum of $44,133.00 for investment in the project generally referred to as

10  Ray Ranch (Arizona).

11      24.  Plaintiffs, Wayne and Candise Canto, are  individuals residing in Santa Clara

12  County, California, who, in part being materially influenced by the urging and

13  statements of WILLIAM E. BUCHHOLZ and the position of trust and confidence existing

14  as a result of involvement with the FAMILY COMMUNITY CHURCH,  delivered the sum

15  of $100,000.00 for investment in a project generally referred to as Wailea Town Center

16  via and after receiving distributions totaling $63,702.02 have a net loss on the

17  investment of $36,297.98; delivered the sum of $75,000.00 for investment in a project

18  generally referred to as Mesa Point; and delivered the sum of $100,000.00 for .

19  investment in a project generally referred to as Ray Ranch Plaza and after receiving

20  distributions totaling $77,933.65 have a net loss on the investment of $22,066.35.

21      25.  Plaintiffs, Frank Carbajal and Megan Carbajal, are individuals residing in San

22  Joaquin County, California, who delivered  $82,000.00 for investment in the project

23  sometimes referred to OC Chicago.

24      26.  Plaintiff, Kwei Choong, is an individual residing in Santa Clara County,

25  California, who, in part being materially influenced by the urging and statements of

26  WILLIAM E. BUCHHOLZ and the position of trust and confidence existing as a result of

27  involvement with the FAMILY COMMUNITY CHURCH,  delivered to the sum of

28  $50,000.00 for investment in the LUXURY DEVELOPMENT FUND (Arizona), and

1  $100,134.00, of which $74,134.00 constituted IRA funds for investment in the project

2  generally referred to as Colorado Condo Fund.

3       27.  Plaintiff, Jason Colyar, is an individual residing in Santa Clara County,

4  California, who delivered  $50,000.00 for investment in Luxury Development Fund.

5       28.  Plaintiff, Jim Coates, is an individual residing in Santa Clara County,

6  California, who delivered the sum of $975,000.00 for investment in the project known as

7  OC Chicago.

8       29.  Plaintiff, JKAT Properties, LLC, is a California limited liability company, of

9  which Plaintiff, Jim Coates is a manager, and which delivered the sum of $250,000.00

10  for investment in the project known as Solomon Towers (Arizona).

11       30.  Plaintiffs, Mark and Kathleen Delman, are  individuals residing in Santa Clara

12  County, California, who, in part being materially influenced by the urging and

13  statements of WILLIAM E. BUCHHOLZ and the position of trust and confidence existing

14  as a result of involvement with the FAMILY COMMUNITY CHURCH,  delivered the sum

15  of $50,000.00 for investment in the LUXURY DEVELOPMENT FUND for use in a

16  project in Arizona.

17       31.  Plaintiffs, Tim and Lori Gale, are  individuals residing in Santa Clara County,

18  California, who delivered to the sum of $200,000.00 for investment in the Luxury

19  Development Fund for a project in Arizona, and $100,000.00 for investment in the

20  project known as Solomon Towers, LLC (Arizona).

21       32.  Plaintiff, Eric Gold, is an individual residing in Santa Clara County, California,

22  who, in part being materially influenced by the urging and statements of WILLIAM E.

23  BUCHHOLZ and the position of trust and confidence existing as a result of involvement

24  with the FAMILY COMMUNITY CHURCH,  delivered the sum of $180,000.00 for

25  investment in the project sometimes known as OC Chicago.

26       33.  Plaintiffs, Jack and Diane Greer, are  individuals residing in Santa Clara

27  County, California, who delivered the sum of $50,000.00 for investment in the project

28  generally known as St. Charles (Chicago) utilizing funds of an IRA of which Jack Greer

is the beneficiary, and $50,000.00 for investment in the project generally referred to as Scottsdale Lofts (Arizona) of which $30,000.00 included funds of an IRA of which Jack Greer is the beneficiary.

34.  Plaintiffs, Jerry and Rhonda Hughes, are individuals residing in Santa Clara County, California, who, in part being materially influenced by the urging and statements of WILLIAM E. BUCHHOLZ and the position of trust and confidence existing as a result of involvement with the FAMILY COMMUNITY CHURCH,  delivered $50,000.00 for investment in LUXURY DEVELOPMENT FUND.

35.  Plaintiff, Jeff Lawrence, is an individual residing in Santa Clara County, California, who delivered $34,000.00 for investment in the project sometimes known as Scottsdale Lofts and $200,000.00 for investment in the project sometimes known as the Chicago Condo Fund.

36.  Plaintiff, Tina McCraw, is an individual residing in Santa Clara County, California, who delivered $50,000.00 for investment in the project sometimes referred to as Wailea and did so via her Pensco IRA.

37.  Plaintiffs, Bruce and Deborah Meeker, are  individuals residing in Santa Clara County, California, who, in part being materially influenced by the urging and statements of WILLIAM E. BUCHHOLZ and the position of trust and confidence existing as a result of involvement with the FAMILY COMMUNITY CHURCH,  delivered $200,054.00 for investment in LUXURY DEVELOPMENT FUND.

38.  Plaintiffs, Matt and Julie Rogers, are individuals residing in Contra Costa County, California, who a total of $50,000.00 for investment in the project generally referred to as Scottsdale Lofts (Arizona) (comprised of $25,000 Invested from Sterling Trust Co. Julie Rogers Sep-IRA account and $25,000 Invested from cash account of Matt & Julie Rogers).

39.  Plaintiff, David Sams, is an individual residing in Alameda County, California, who delivered $145,000.00 for investment in a project in Erie, Colorado.

40.  Plaintiff, Cynthia Semenoff, is an individual residing in Santa Clara County,

1    California, who delivered funds for the project in Gilbert, Arizona and has suffered

2    a net loss thereon of $15,711.00, delivered $25,000.00 for investment based on the

3    project in Mesa Point, Arizona, delivered funds for the project sometimes referred to as

4    Chicago Condo Fund and has suffered a net loss thereon of $27,895.00, and delivered

5    $200,100.00 for investment in the LUXURY DEVELOPMENT FUND.

6        41.  Plaintiffs, Brian and Debra Starr, (and in combination and for their "silent

7    partner" Juan Bettaglio) delivered $200,000.00 for investment in the project sometimes

8    referred to as OC Chicago.

9        42.  Plaintiff, Jeffrey Steele, is an individual residing in Santa Clara County,

10   California, who delivered $24,000.00 for investment in the project sometimes referred to

11   as Mesa Point and did so via his Pensco IRA.

12       43.  Plaintiff, Nicole Steele,  is an individual residing in Santa Clara County,

13   California, who delivered $8,000.00 for investment in the project sometimes referred to

14   as Mesa Point and did so via her Pensco IRA.

15       44.  Plaintiff, Laura Steele,  is an individual residing in Santa Clara County,

16   California, who delivered  $8,000.00 for investment in the project sometimes referred to

17   as Mesa Point and did so via her Pensco IRA.

18       45.  Plaintiffs, Len and Jan Turner, are  individuals residing in Murfreesboro,

19   Tennessee, who delivered $25,000.00 for investment based on the project in Mesa

20   Point, Arizona, and delivered funds for the project sometimes referred to as Wailea and

21   has suffered a net loss thereon of $36,298.00.

22       46.  Plaintiffs, Irvin and Yolanda Urbanski, are  individuals residing in Santa Clara

23   County, California, who, in part being materially influenced by the urging and

24   statements of WILLIAM E. BUCHHOLZ and the position of trust and confidence existing

25   as a result of involvement with the FAMILY COMMUNITY CHURCH,  delivered funds

26   for investment in the LUXURY DEVELOPMENT FUND and have suffered a net loss

27   thereon of $400,315.00 and delivered funds for investment in the project sometimes

28   referred to as Patriot Courtyards and have suffered a net loss thereon of $66,316.00.

1      47.  Plaintiff, Kathy Ury, is an individual residing in San Mateo County, California,

2  who delivered funds for investment in the project sometimes referred to as Gilbert Office

3  and has suffered a net loss thereon of $17,854.00, $25,000.00 for investment in the

4  project sometimes referred to as Mesa Point, and $53,655.00 for investment in the

5  project sometimes referred to as Colorado Condo Fund.

6      48.  Plaintiff, Mark Van Buhler, is an individual residing in Santa Clara County,

7  California, who delivered $200,000.00 for investment in the LUXURY DEVELOPMENT

8  FUND.

9      49.  Plaintiffs, Bob and Nancy Winger, are  individuals residing in Santa Clara

10  County, California, who, in part being materially influenced by the urging and

11  statements of WILLIAM E. BUCHHOLZ and the position of trust and confidence existing

12  as a result of involvement with the FAMILY COMMUNITY CHURCH,  delivered

13  $52,000.00 for investment in the project sometimes referred to as Mesa Point,

14  $200,000.00 for investment in the project sometimes referred to as Colorado Condo

15  Fund, $30,000.00 for investment in the project sometimes referred to as Solomon

16  Towers, delivered funds for investment in the project sometimes referred to as Ray

17  Ranch and have suffered a net loss thereon of $22,066.00, and delivered funds for

18  investment in the project sometimes referred to as Patriot Courtyards and have suffered

19  a net loss thereon of $155,474.00.

20      50.  Plaintiff, James Wong, is an individual residing in Santa Clara County,

21  California, who delivered $50,000.00 for investment in the project sometimes referred to

22  as Scottsdale Lofts, delivered $46,000.00 for investment in the in the LUXURY

23  DEVELOPMENT FUND, $100,000.00 for investment in pursuits sometimes referred to

24  as Erie Fund, and $25,000.00 for investment in the project sometimes referred to as

25  Colorado Condo Fund.

26      51.  Plaintiff, Charlin Yen, is an individual residing in Santa Clara County,

27  California, who delivered $25,000.00 for investment in the in the LUXURY

28  DEVELOPMENT FUND.

52. The amounts alleged above as to each Plaintiff reflect the current losses of each which, collectively, total approximately $6.9 million.

53. On information and belief, Defendant, RONALD BUCHHOLZ ("BUCHHOLZ"), is, and at all times relevant, purported to be a citizen of Nevada, but also resided in and conducted business in Santa Clara County, California.

54. On information and belief, Defendant, CHARISE FISCHER, formerly known and a.k.a., Charise Buchholz ("FISCHER") is, and at all times relevant, purported to be a citizen of Nevada, but also resided in and conducted business in Santa Clara County, California.

55. On information and belief, Defendant, SOLOMON CAPITAL, LLC, ("SOLOMON CAPITAL") is a Nevada limited liability company, that maintained an office at 20 Great Oaks Blvd., Suite 230, San Jose, California. SOLOMON CAPITAL, in connection with Defendants RONALD BUCHHOLZ and Charise FISCHER, was an issuer of the unqualified securities for investment procured by the Plaintiffs herein.

56. On information and belief, Defendant JONATHON VENTO ("VENTO"), is, and at all times relevant was, a citizen of Arizona. Defendant VENTO, at all times relevant was, a resident of Maricopa County, Arizona, and exercised a position of control over other defendants including, but not necessarily limited to, GRACE CAPITAL, LLC, dba GRACE COMMUNITIES, a Arizona limited liability company, VENTO INVESTMENTS, LLC, an Arizona limited liability (sometimes also referred to herein as "VI"), and the VENTO FAMILY TRUST.

57. On information and belief, Defendant DONALD ZELEZNAK ("ZELEZNAK"), is, and at all times relevant was, a citizen of the State of Arizona and a resident of Washoe County, Nevada, and exercised a position of control over other defendants including, but not necessarily limited to, GRACE CAPITAL, LLC, dba GRACE COMMUNITIES, a Arizona limited liability company, and ZELEZNAK PROPERTY MANAGEMENT, LLC dba KELLER WILLIAMS REALTY, (sometimes also referred to herein as "ZPM") an Arizona limited liability company.

58.  Defendant Z-LOFT, LLC, is an Arizona limited liability company (sometimes also referred to herein as "Z-LOFT"), with its principal place of business in Maricopa County, Arizona.  Z-LOFT, in connection with Defendants SOLOMON CAPITAL, RDB DEVELOPMENT, BUCHHOLZ, FISCHER, ZELEZNAK, ZPM, VENTO, and GRACE CAPITAL materially assisted Defendants to perpetrate the fraudulent Enterprise discussed herein upon the Plaintiffs for the purchase and sale transactions for property for an over-inflated and above fair market value price.

59.  Defendant GRACE CAPITAL, LLC dba GRACE COMMUNITIES is an Arizona limited liability company (sometimes also referred to herein as "GRACE"), with its principal place of business in Maricopa County, Arizona.  GRACE CAPITAL, in connection with Defendants SOLOMON CAPITAL, RDB DEVELOPMENT, BUCHHOLZ, FISCHER, ZELEZNAK, Z-LOFT, ZPM, and VENTO, materially assisted Defendants to perpetrate the fraudulent Enterprise discussed herein upon the Plaintiffs for the purchase and sale transactions for property for a grossly over-inflated and above fair market value price.

60.  Defendant ZELEZNAK PROPERTY MANAGEMENT, LLC, also dba KELLER WILLIAMS REALTY (sometimes also referred to herein as "ZPM"), is an Arizona limited liability company, with its principal place of business at 10101 N. 92nd St., # 101, Scottsdale, Maricopa County, Arizona.  ZPM, in connection with Defendants including, but not necessarily limited to, SOLOMON CAPITAL, RDB DEVELOPMENT, BUCHHOLZ, FISCHER, ZELEZNAK, Z-LOFT, VENTO, and GRACE CAPITAL, was the responsible broker for the agent ZELEZNAK and materially assisted Defendants to perpetrate the fraudulent Enterprise discussed herein upon the Plaintiffs for the purchase and sale transactions for property for an over-inflated and above fair market value price.

61.  Defendant, RDB DEVELOPMENT, LLC, is a limited liability company (sometimes also referred to herein as "RDB"), with its principal place of business at 19 Avenida Sorrento, Henderson, Clark County, Nevada.  RDB DEVELOPMENT, in

1  connection with Defendants including, but not necessarily limited to, SOLOMON

2  CAPITAL, BUCHHOLZ, FISCHER, ZELEZNAK, Z-LOFT, ZPM, VENTO, and GRACE

3  CAPITAL, materially assisted Defendants to perpetrate the fraudulent Enterprise

4  discussed herein upon the Plaintiffs for the purchase and sale transactions for property

5  for an over-inflated and above fair market value price. Based on information and belief,

6  Defendants BUCHHOLZ and FISCHER diverted undisclosed funds from the Solomon

7  Towers project and others to RDB DEVELOPMENT for their own personal use to the

8  detriment of Plaintiffs herein.

9     62. Defendant, KELLER WILLIAMS REALTY, INC., is a Texas corporation

10  (sometimes also referred to herein as "KWR"), with its principal place of business in

11  Austin, Travis County, Texas. KELLER WILLIAMS is vicariously liable for the actions of

12  its franchisee, ZPM, which materially assisted Defendants to perpetrate the fraudulent

13  Enterprise discussed herein upon the Plaintiffs for the purchase and sale transactions

14  for property for an over-inflated and above fair market value price.

15     63. On information and belief, Defendant, ZELTOR, LLC, a Nevada limited

16  liability company (sometimes also referred to herein as "ZELTOR"), that materially

17  assisted Defendants to perpetrate the fraudulent Enterprise discussed herein upon the

18  Plaintiffs including, but not necessarily limited to, purchase and sale transactions for

19  property for an over-inflated and above fair market value price and diversion of funds.

20     64. On information and belief, Defendant, RNC HOLDINGS, LLC, a Nevada

21  limited liability company (sometimes also referred to herein as "RNC"), that materially

22  assisted Defendants to perpetrate the fraudulent Enterprise discussed herein upon the

23  Plaintiffs including, but not necessarily limited to, purchase and sale transactions for

24  property for an over-inflated and above fair market value price and diversion of funds

25  and was managed by Defendants BUCHHOLZ and FISCHER.

26     65. Defendant, LUXURY DEVELOPMENT FUND, LLC, a Delaware limited

27  liability company (sometimes also referred to herein as "LDD"), was an entity used by

28  Defendants in conjunction with the Enterprise to raise funds and materially assist

1  Defendants to perpetrate the fraudulent Enterprise discussed herein upon the Plaintiffs

2  for the purchase and sale transactions of property for an over-inflated and above fair

3  market value price and diversion of funds and was managed by Defendants

4  BUCHHOLZ and FISCHER.

5      66.  Defendant, EQUITY ENTERPRISES, INC., a California corporation

6  (sometimes also referred to herein as "EEI"), was an entity used by Defendants in

7  conjunction with the Enterprise to raise funds and materially assist Defendants to

8  perpetrate the fraudulent Enterprise discussed herein upon the Plaintiffs for the

9  purchase and sale transactions of property for an over-inflated and above fair market

10  value price and diversion of funds and was controlled by Defendants BUCHHOLZ and

11  FISCHER.

12      67.  Defendant, EQUITY ENTERPRISES-NEVADA, INC., a Nevada corporation

13  (sometimes also referred to herein as "EENI"), was an entity used by Defendants in

14  conjunction with the Enterprise to raise funds and materially assist Defendants to

15  perpetrate the fraudulent Enterprise discussed herein upon the Plaintiffs for the

16  purchase and sale transactions of property for an over-inflated and above fair market

17  value price and diversion of funds and was controlled by Defendants BUCHHOLZ and

18  FISCHER.

19      68.  Defendant, EQUITY ENTERPRISE MANAGEMENT, INC., (sometimes also

20  referred to herein as "EEM") was an entity used by Defendants in conjunction with the

21  Enterprise to materially assist Defendants to perpetrate the fraudulent Enterprise

22  discussed herein upon the Plaintiffs for the purchase and sale transactions of property

23  for an over-inflated and above fair market value price and diversion of funds and was

24  controlled by Defendants BUCHHOLZ and FISCHER.

25      69.  Defendant, ALABANZA, INC., formerly a California corporation was an entity

26  used by Defendants, primarily FISCHER, in conjunction with the Enterprise to materially

27  assist Defendants to perpetrate the fraudulent Enterprise discussed herein upon the

28  above fair market value price and diversion of funds, and receipt of kickbacks.

70. Defendant, VENTO INVESTMENTS, LLC, an Arizona limited liability, was an entity used by Defendants in conjunction with the Enterprise to materially assist Defendants to perpetrate the fraudulent Enterprise discussed herein upon the Plaintiffs for the purchase and sale transactions of property for an over-inflated and above fair market value price and diversion of funds and was controlled by Defendant, VENTO.

71. Defendant, VENTO FAMILY TRUST was used by one or more of the individual and/or other Defendants in conjunction with the Enterprise to materially assist Defendants to perpetrate the fraudulent Enterprise discussed herein upon the Plaintiffs primarily in conjunction with the purchase and sale transactions of property for an over-inflated and above fair market value price and diversion of funds and was controlled by Defendant, VENTO.

72. Defendant, WILLIAM E. BUCHHOLZ is pastor of the FAMILY COMMUNITY CHURCH, a California corporate entity, who utilized his position of faith, confidence and trust to induce and entice some of the plaintiffs, as members of the church, to invest funds with his son, Defendant, RONALD BUCHHOLZ, in some instances promising that church members who did so would be relieved or their obligation to tithe. Plaintiffs are informed and believed that Defendant, WILLIAM E. BUCHHOLZ, and Defendant, FAMILY COMMUNITY CHURCH, knowingly engaged in transactions with one or more of the other Defendants for direct and indirect benefit of the church and did so on terms and conditions that manifest furtherance of the Enterprise and breach of duties of faith, trust and confidence owed to church members, and that such acts were done by Defendant, WILLIAM E. BUCHHOLZ, within the scope of his employment or agency with or of the church.

73. Defendant, FAMILY COMMUNITY CHURCH, a California corporate entity (sometimes also referred to herein as "FCC"), of which Defendant, WILLIAM E. BUCHHOLZ is pastor and is, at a minimum, vicariously liable for the acts of WILLIAM E. BUCHHOLZ, the acts of the pastor being those of an employee and/or managing agent, if not in fact those of an officer or director.

74. Plaintiffs are informed and believe and thereon allege that Defendant, GUY BERRY (sometimes also referred to herein as "BERRY"), was held out by SOLOMON CAPITAL as the person responsible for "legal and compliance" and that if true, the Enterprise was furthered by GUY BERRY.

75. Plaintiffs do not know the true names of Defendants DOES 1 through 100 and therefore sue them by those fictitious names. Plaintiffs are informed and believe and on that basis allege, that at all times mentioned in this complaint, DOES 1 through 100 were the agents and employees of their co-Defendants, and in performing the acts and omissions alleged in this complaint were acting within the course and scope of that agency and employment.

## IV.  FACTUAL ALLEGATIONS

### A. Defendants' Alleged Real Estate Investment Company

76. Defendants BUCHHOLZ and FISCHER are members of the Family Community Church (hereinafter "Church") located at 478 Piercy Road, San Jose, California. William Buchholz, who is Defendants BUCHHOLZ and FISCHER's father, is the Senior Pastor for the Church.

77. According to the SOLOMON CAPITAL website located at http://www.solomoncap.com, BUCHHOLZ is the President of Defendant SOLOMON CAPITAL. Defendant FISCHER is both a principal and the Chief Financial Officer of Defendant SOLOMON CAPITAL. Based on information and belief, BUCHHOLZ, FISCHER, and SOLOMON CAPITAL market and advertise themselves as experts in the context of real estate investing.

78. Plaintiffs allege on information and belief that SOLOMON CAPITAL is an investment group associated with RDB DEVELOPMENT and EQUITY ENTERPRISES, INC., LUXURY DEVELOPMENT FUND, and others. Defendants BUCHHOLZ and

1  FISCHER founded Equity Enterprises, Inc., as a predecessor to SOLOMON CAPITAL.

2  BUCHHOLZ is the President of both entities.  SOLOMON CAPITAL, BUCHHOLZ,

3  FISCHER, LUXURY DEVELOPMENT FUND, and EQUITY ENTERPRISES, INC.,

4  acted as the "issuers" of the unqualified securities to the Plaintiff investors.

5      79.  Defendants BUCHHOLZ, FISCHER and SOLOMON CAPITAL derive their

6  income through investment activities on behalf of themselves and others, some of who

7  they met through their relationship with the Church.  Based on information and belief,

8  BUCHHOLZ, FISCHER and SOLOMON CAPITAL market and advertise themselves as

9  experts in the context of real

10     80.  Based on information and belief, Defendants BUCHHOLZ' father, William

11 Buchholz, repeatedly recommended that the parishioners of his Church invest with his

12 son and daughter, Defendants BUCHHOLZ and FISCHER, and their "investment

13 company," SOLOMON CAPITAL.  At times, Pastor Buchholz made statements directly

14 to his congregation from the "pulpit" encouraging them to invest with his son and

15 daughter and at times stated that those who did so would be relieved of their obligations

16 to tithe.

17     81.  Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL secured

18 investments from Plaintiffs in numerous different investment vehicles, including raw land

19 developments and acquisition and development projects.  The investor funds were

20 placed in different positions within the project inclusive of debt and equity positions.

21     82.  In each case for each alleged investment, Defendants BUCHHOLZ,

22 FISCHER and SOLOMON CAPITAL received a "developer fee" of the amount raised

23 and invested, and structured investments is such a fashion that one or more defendants

24 would directly and/or indirectly retain control.  Based on information and belief,

25 Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL were also to receive a

26 percentage of any profit earned from the investment projects and, in some, FISCHER

27 undertook to demand and receive kickbacks from contractors and/or out of sales.

28     83.  Based on information and belief, Defendants BUCHHOLZ, FISCHER, and

SOLOMON CAPITAL also took undisclosed "kick backs" from third parties in connection with the purchase, sale, and alleged development of SOLOMON CAPITAL investment projects to the detriment of the Plaintiff investors.

84.  Based on information and belief, Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL have taken approximately hundreds of thousands, if not millions, of dollars for "developer fees" from the various projects to the detriment of the Plaintiff investors.

85.  Based on information and belief, Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL moved or transferred the investments of the Plaintiff investors to additional projects without their consent and encumbered the projects with additional debt without the consent of the Plaintiff investors.

86.  Based on information and belief, Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL have improperly commingled the investor funds with their own and with those of the other investors and other entities controlled by them.

87.  Based on information and belief, Defendants BUCHHOLZ and FISCHER diverted undisclosed funds from the multiple  projects to entities controlled by them for their own personal use and without fair value given therefore to the detriment of Plaintiffs herein.

## B.  EQUITY ENTERPRISES PROJECTS

88.  Defendants, BUCHHOLZ, FISCHER, and SOLOMON CAPITAL controlled EQUITY ENTERPRISES, INC., a California corporation, and EQUITY ENTERPRISES-NEVADA, INC., a Nevada corporation, and through these and other entities, undertook to raise investor money in various projects. Touting SOLOMON CAPITAL "as a solution for real estate investors that want to maximize their upside profit potential and earn the returns that are available to savvy investors, while minimizing risk through partnership with knowledgeable practitioners..." and "relationships with real estate brokers,

1    developers, general contractors, financial institutions and consultants nationwide"

2    BUCHHOLZ and FISCHER sought investors for various projects in which one or more

3    of the EQUITY ENTERPRISE retained control and ability to siphon funds and in

4    furtherance of the Enterprise.

5        89. Defendants, BUCHHOLZ, FISCHER undertook to form EEI-WAILEA TOWN

6    CENTER, LLC, a California limited liability company, to seek investors for a project

7    referred to by Defendants as "Wailea Town Center" and structured EEI-WAILEA

8    TOWN CENTER, LLC, with EQUITY ENTERPRISES, INC., retaining control as

9    manager.

10       90. Defendants, BUCHHOLZ, FISCHER undertook to form EEI-RAY RANCH,

11   LLC, with the manager being EQUITY ENTERPRISES, INC., for project referred to by

12   Defendants as "Ray Ranch" in Scottsdale, Arizona. As part of this project, Defendants

13   created a series of other entities controlled by Defendants, the full nature and extent of

14   which is not now known, but is believed to have included giving and receiving of deeds

15   on terms and conditions misrepresented to investors and/or concealing from investors

16   transactions which Defendants had a duty to disclose.

17       91. Defendants, BUCHHOLZ, FISCHER undertook to form EENI-MESA POINT,

18   LLC, for a project referred to by Defendants as "Mesa Point" in Arizona, with EQUITY

19   ENTERPRISES-NEVADA, INC., as manager and of which RON BUCHHOLZ was

20   President. At one point with the project looking as though it would be profitable,

21   investors were solicited and misrepresentations made to induce members to transfer

22   their interest back for unsecured promissory notes. During the time this project and

23   property was controlled by Defendants, it was renamed and re-sold to other investor

24   groups.

25       92. Defendants undertook a project referred to as Osborn Commons in

26   Scottsdale, Arizona. For this project, a series of entities were formed, always with

27   Defendants remaining in control so as to be able to sell the property at a grossly inflated

28   price compared to the represented acquisition price, and siphon virtually any and all of

1  investor funds. Defendants first formed EQUITY ENTERPRISES, LLC, which took an

2  interest in another entity formed by Defendants, EENI-Scottsdale Lofts, LLC, a

3  Delaware limited liability company, of which Osborn Commons Investors, LLC, an

4  Arizona limited liability company regarding Osborn Commons in Scottsdale, Arizona,

5  took an interest and retained control by having ZELTOR, LLC, act as manager. an entity

6  of which Defendant was ZELEZNAK was a principal in addition to Defendant, VENTO

7  FAMILY TRUST acting as manager of Osborn Commons Project.

8      93.  Through EQUITY ENTERPRISES-NEVADA, INC., of which RON

9  BUCHHOLZ was President, Defendants formed EENI-GILBERT OFFICE, LLC, a

10  Nevada limited liability company, for a project referred to by Defendants as "Red

11  Mountain" in which Defendants  purloined revenue, inflated and misrepresented land

12  cost and siphoned  investor funds as part of the purported sale to EENI-GILBERT

13  OFFICE, LLC.

14      94.  Defendants formed EENI-PATRIOT COURTYARDS, LLC, a Delaware

15  limited liability company for a project referred to as Patriot Courtyards in Glenview,

16  Illinois, and retained control via  EQUITY ENTERPRISES-NEVADA, INC., acting as

17  manager and of which BUCHHOLZ was President.

18      95.  Defendants formed EENI-ST. CHARLES OFFICE INVESTORS, LLC a

19  Nevada limited liability company, for a project referred to by Defendants as "St. Charles"

20  in St. Charles, Illinois. Defendants purloined revenue, inflated land sale cost and sale

21  price and were able to pocket ill gotten gains by having EQUITY ENTERPRISES-

22  NEVADA, INC., act as manager. After investor funds were siphoned and by

23  misrepresentation as to the status of the project, BUCHHOLZ undertook to have

24  investors assume the position of EQUITY ENTERPRISES-NEVADA, INC.

25      96.  BUCHHOLZ and FISCHER formed EENI - Patriot Courtyards, LLC, a

26  Delaware limited liability company, with EQUITY ENTERPRISES-NEVADA, INC., to act

27  as manager, for the purpose of obtaining investment money for a project known as

28  Patriot Courtyards (in Chicago) intended as a 10 building office condo complex.

1  Defendants used this vehicle and project to obtain secret profits primarily by

2  misrepresentation of land cost, the taking of fees without intention of performing

3  services of fair value, and retention of an interest with giving fair value.

4      97.  BUCHHOLZ and FISCHER formed EEI - Wailea Town Center, LLC,  for a

5  project known as Wailea Town Center and for the purpose of obtaining investment

6  money. Defendants used this vehicle and project to obtain secret profits primarily by

7  misrepresentation of land cost, the taking of fees without intention of performing

8  services of fair value, and retention of an interest with giving fair value.

9      98.  BUCHHOLZ and FISCHER formed EEI-Ray Ranch, LLC, and Ray Road

10  Office Investors, LLC, an Arizona  limited liability company, for a project known as Ray

11  Ranch or Ray Ranch Professional Plaza. Defendants used this vehicle and project to

12  obtain secret profits primarily by misrepresentation of land cost, the taking of fees

13  without intention of performing services of fair value, and retention of an interest without

14  giving fair value.

15      99.  In all of the above scenarios, Defendants engaged in one or more of the

16  following actionable activities:

17      a.    Misrepresenting the original acquisition cost for property so as to be able to

18            sell it to the entity in which investors had acquired an interest so as to be

19            able to siphon the "profit";

20      b.    By taking unconscionable fees for services never intended to be rendered,

21            most often couched as "developer fees":

22      c.    Retaining an interest in and management control of  the entity or entities

23            formed as devices for investment money in a particular project thereby

24            incurring a fiduciary responsibility to other members, a responsibility wilfully

25            ignored with disdain by Defendants;

26      d.    By structuring transactions with fees and/or commissions in the nature or

27            realtor compensation at unconscionable levels, sometimes as high as 20%;

28  ///

e.    By purchasing or optioning land in their own names and/or through entities controlled by them and then selling to the investor entity at grossly inflated prices;

f.    After acquiring property and siphoning unconscionable amounts of money by improper means, engaging in a series of misrepresentations as to the ongoing status of projects so as to create situations to pressure investors for additional infusion of cash under threat of loss of original investment or falsely creating an excuse for folding up a project with minimal or no return to investors.

## C.  ERIE LAND FUND PROJECTS

100.  Defendants created a number of entities for purported investment opportunities in Colorado primarily a project referred to as the "Erie Project" in Erie, Colorado.

101.  Defendants created ERIE DEVELOPMENT PARTNERS, LLC, a Colorado limited liability company of which BUCHHOLZ and FISCHER were the initial managers and raised money by issuing promissory notes to investors. The actual maker on the notes was ERIE LAND FUND, LLC, an entity controlled by Defendant, RDB, and an entity which in and of itself had no direct interest in the project nor assets sufficient to stand behind the notes, the only source of repayment being Defendants ability to siphon funds in an improper manner.

102.  Defendants, BUCHHOLZ and FISCHER, then formed COLORADO INVESTMENT GRP, LLC, a Colorado limited liability company, which they controlled as managers. As part of the purported sale and transfer of interest in the property and project and by gross misrepresentation as to acquisition and other costs, Defendants, BUCHHOLZ and FISCHER were able to siphon extraordinary sums of money when they arranged for assignment of interests to ERIE LAND FUND, LLC.

103. In addition and on information and belief, Plaintiffs allege that the name of this project was change to Sierra Vista so as to facilitate what was represented to be a legitimate sale, but was in fact part of a concocted sale arranged so as to be able to siphon secret profits.

104. Defendants used this vehicle to perpetrate similar frauds upon investors in projects and entities known as Main Street Commons, and COURTYARDS AT BRIARGATE, LLC, involving a project known as the Courtyards at Briargate in Colorado Springs.

## D. LUXURY DEVELOPMENT FUND

105. Defendants BUCHHOLZ and FISCHER created LUXURY DEVELOPMENT FUND, LLC, a Delaware limited liability company, to raise funds by issuance of promissory notes, many on the basis of fraudulently represented security, purportedly for use "to provide mezzanine financing in connection with real estate development projects ..." with regard to projects identified and referred to by Defendants as "44 Monroe" in Phoenix Arizona, "Portales Place" in Scottsdale, Arizona, office condominiums in Chicago, as well as other unidentified projects.

106. Plaintiffs are informed and believe that funds raised were used to inject funds into other projects controlled by Defendants as purported mezzanine financing, without full and complete disclosure, to take repayment at exorbitant and usurious rates from the entities and projects controlled by Defendants, first to the projects involving OC INVESTORS, LLC, and this being one of the means whereby Defendants undermined other projects for personal gain.

## E. ARIZONA PROJECTS

107. Defendants engaged in multiple similar activities regarding purported

Complaint, *Yu-Sze Yen, et al. v. Buchholz, et al.*                    Page 28 of 67

1  projects located in Arizona.

2      108.  Defendants formed  SOLOMON TOWERS, LLC, a Nevada limited liability

3  company, with RON BUCHHOLZ managing member, for a project commonly referred to

4  as Solomon Towers.

5      109.  In or around February of 2005 and at other times, SOLOMON CAPITAL

6  presented the Solomon Towers, LLC, high rise condominium investment ("Solomon

7  Towers project") opportunity to Plaintiffs, including Pro Forma Financials. There was no

8  Private Placement Memorandum or similar information.

9      110.  Defendant ZELEZNAK was represented as an active participant and was

10  physically present during some of the presentations to potential investors.  ZELEZNAK

11  also acted as the buyer's broker for the purchase of the Solomon Towers property.

12      111.  In March of 2005, the investors began executing an Operating Agreement

13  with Solomon Towers, LLC.  The Operating Agreement included 18 initial members who

14  contributed a total of $4,169,400.00  .  Further, the Operating Agreement included 13

15  loans made to Solomon Towers, LLC, totaling $840,600.00.  Accordingly, the total of

16  initial payments to Solomon Towers, LLC, were $5,010,000.00.

17      112.  As part of the Operating Agreement, Defendants BUCHHOLZ, FISCHER,

18  and SOLOMON CAPITAL, as managers of Solomon Towers, LLC, agreed, among

19  other things, to use company funds only to further the purposes of the company, not to

20  commingle the funds with their own or others' funds, not to knowingly perform any act

21  that contravened the Operating Agreement or was inconsistent with the purposes of the

22  company, and to keep accurate books and records for the company.

23      113.  The investments sold by the Plaintiff investors qualify as "securities"

24  pursuant to California Corporations Code § 25019.  Defendants BUCHHOLZ,

25  FISCHER, and SOLOMON CAPITAL qualify as the "broker-dealers" and "issuers" of

26  the securities pursuant to California Corporations Code §§ 25004 and 25010.

27      114.  Based on information and belief, Defendants BUCHHOLZ, FISCHER, and

28  SOLOMON CAPITAL have neither qualified for nor exempted themselves from

qualification of the "securities" in accordance with California Corporations Code §
25110.

115.  The potential investors approached by Defendants BUCHHOLZ and
FISCHER were unsophisticated real estate investors and relied upon the
representations of Defendants BUCHHOLZ and FISCHER.  The risks associated with
the investments were not explained to the Plaintiff investors, who relied upon
Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL in making their
investment decisions.  The reliance of the Plaintiff investors upon the representations,
information and promises by Defendants BUCHHOLZ, FISCHER, and SOLOMON
CAPITAL was justified based upon Defendants' fiduciary role and purported
experience.

116.  Plaintiff investors had no say or control over their funds, the nature or types
of positions in which they were placed, the expenditure of the funds for development
projects, or the administration of the funds.

117.  Plaintiff investors had no say or control over the additional investors or
members that were chosen by Defendants BUCHHOLZ, FISCHER, and SOLOMON
CAPITAL as their ostensible "partners" in the Solomon Towers project.

118.  Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, as the
principals of the company, acted as the managing members for the Solomon Towers
project.  Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, therefore, held
fiduciary duty obligations to the Plaintiff investors that were breached pursuant to the
fraudulent Enterprise and acts set forth herein.

119.  Soho Lofts, LLC was owned and managed by ZELEZNAK.  On July 25,
2002, Soho Lofts purchased property located at 625-643 N. 2nd Avenue, Phoenix, AZ
(hereinafter referred to as "the Property") from Core Builders, Inc. for $392,000.00.
According to tax records, the square footage of the Property is 28,000 square feet.
Thus, the cost for this transaction was $14.00 per square foot.

120.  On August 17, 2004, Soho Lofts, LLC changed its name to Z-LOFT, LLC.

1    On April 11, 2005, Z-LOFT, in connection with GRACE CAPITAL, sold the
2  Property to SOLOMON TOWERS, LLC for $5,004,929.00. The cost per square foot for
3  this transaction was approximately $178.75 per square foot. Based on information and
4  belief, the actual market rate for the land from February to March of 2005 was
5  approximately $33.19 per square foot.

6    121. Based on information and belief, the Plaintiff investors allege that
7  Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL shared in the
8  distribution of ill-gotten gains from the "pump and dump" transaction to the detriment of
9  the Plaintiff investors.

10    122. As the President and Chief Financial Officers of SOLOMON CAPITAL and
11  the managing partners of Solomon Towers, LLC, Defendants BUCHHOLZ, FISCHER,
12  and SOLOMON CAPITAL held fiduciary duties to the Plaintiff investors that were
13  breached in connection with the "pump and dump" transaction to the detriment of the
14  Plaintiff investors. Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL
15  knew, or should have known, that the price paid for the land was more than five times
16  its fair market value and nearly thirteen times the cost to Z-LOFT and ZELEZNAK, that
17  the inflated purchase price benefitted Defendants personally to the detriment of Plaintiff
18  investors, and constituted a breach of Defendants' fiduciary duties to the Plaintiff
19  investors.

20    123. Based on information and belief, Plaintiffs allege that Defendants
21  ZELEZNAK, Z-LOFT, ZPM, VENTO, and GRACE CAPITAL all profited on the
22  over-inflated and above market "pump and dump" sale to the detriment of the Plaintiff
23  investors. Defendants ZPM and ZELEZNAK received a commission on the sale of the
24  Property of $1,000,000.00 (one million dollars.) This commission rate is equivalent to a
25  20% (twenty-percent) commission, which far exceeds the prevailing market rate of 5%
26  to 6% for sales transactions involving raw land. The HUD-1 Closing Statement for the
27  purchase and sale transaction  sets forth the payment of the commission of
28  $1,000,000.00 (one million dollars) to Defendants ZELEZNAK and ZPM.

124. The implications of this commission for the sale of the Property support the conclusion that Defendants ZPM and ZELEZNAK knowing and materially aided and assisted Defendants BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RDB DEVELOPMENT, ZELEZNAK, Z-LOFT, ZPM, VENTO, and GRACE CAPITAL to perpetrate the fraudulent Enterprise as discussed herein against the Plaintiffs. The implications of the over-inflated and above market commission for the sale of the Property from Defendants Z-LOFT, GRACE CAPITAL, VENTO and ZELEZNAK to the Plaintiffs supports the conclusion that Defendants BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RDB DEVELOPMENT, ZELEZNAK, Z-LOFT, ZPM, VENTO, and GRACE CAPITAL knowingly and materially aided and assisted in an Enterprise to perpetrate the fraud as discussed herein against the Plaintiffs.

125. Based on information and belief, Defendants VENTO and GRACE CAPITAL received a commission, "kick back", or distribution of the ill gotten proceeds from the "pump and dump" transaction described herein and participated in the fraudulent Enterprise described herein upon the Plaintiff investors to their benefit and to the detriment of the Plaintiff investors.

126. Based on information and belief, Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL also profited from the over-inflated and above market "pump and dump" sale to the detriment of the investors. Moreover, based on information and belief, Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL have received "developer fees" in excess of $330,000 from the amount raised and invested. Based on information and belief, Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL were also to receive a percentage of any profit earned from the investment projects.

127. Based on information and belief, Defendants BUCHHOLZ, FISCHER and SOLOMON CAPITAL also took undisclosed "kick backs" from third-parties in connection with the purchase, sale, and alleged proposed development of the Solomon Tower investment project to the detriment of the Plaintiff investors.

128. Based on information and belief, on February, 1 2006, Solomon Towers,

1  LLC deeded the Property to Z-LOFT, the original seller, for de minimus consideration.

2  Further, on September 18, 2006, Solomon Towers, LLC purchased the Property from

3  Z-LOFT for $10.00.  The aforementioned acts were undertaken as further attempts to

4  disguise the fraudulent nature of the Enterprise upon the Plaintiff investors.

5      129.  Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, in

6  connection with the presentation to the Plaintiff investors regarding the Solomon Towers

7  project  failed to disclose the pre-existing relationship between Defendants

8  BUCHHOLZ, FISCHER, and SOLOMON CAPITAL with Defendants ZELEZNAK and

9  VENTO and their partnership entities Z-LOFT, ZPM, and GRACE.  The failure to

10  disclose this fact constitutes a material omission since, among other reasons, the

11  Property was purchased by Defendants BUCHHOLZ, FISCHER, and SOLOMON

12  CAPITAL, using the Plaintiff investors' funds, from Defendants ZELEZNAK and VENTO,

13  and/or their companies, Z-LOFT, ZPM, and GRACE CAPITAL, for a vastly over-inflated

14  price.

15      130.  Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, in

16  connection with the presentation to the Plaintiff investors regarding the Solomon Towers

17  project, failed to disclose that the Property was not worth the amount that would be

18  paid.

19      131.  Defendants failed to disclose the fact that the real estate agent and broker

20  for the transaction, ZELEZNAK and ZPM, was also the seller of the Property and did not

21  disclose until just before closing the fact that ZELEZNAK received a $1,000,000.00

22  commission for his role as the seller's agent for the transaction. This commission rate is

23  equivalent to a 20% (twenty-percent) commission, which far exceeds the prevailing

24  market rate of 5% to 6% for sales transactions involving raw land.  Based on

25  information and belief, ZELEZNAK and ZPM acted in a dual agency role in connection

26  with the purchase and sale of the Property.  Defendants ZELEZNAK and ZPM's dual

27  agency was similarly not disclosed by Defendants SOLOMON CAPITAL, BUCHHOLZ,

28  and FISCHER to the Plaintiff investors.

132. Defendants further failed to disclose:  (1) the pre-existing relationship between Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL and Defendants VENTO and ZELEZNAK; or (2) that VENTO and ZELEZNAK were involved in the GRACE CAPITAL partnership with the real estate agent for the transaction, ZELEZNAK, who was also the seller of the Property.  Based on information and belief, Defendant VENTO and ZELEZNAK received a distribution from the purchase and sale proceeds from the transaction at issue for the Property.  Defendants ZELEZNAK and VENTO, and/or their related companies Z-LOFT, ZPM, and GRACE CAPITAL materially aided SOLOMON CAPITAL, BUCHHOLZ, and FISCHER within the meaning of California Corporations Code Sections 25503, 25102(f), and 25110 and are, therefore, jointly and severally liable to Plaintiffs pursuant to California Corporations Code Sections 25501, 25401, and 25504.

133. Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, failed to disclose that the Plaintiff investors may be subject to supplemental capital obligations in the future.  To the contrary, Plaintiff investors were told that they had no obligation beyond their initial investment.  The Pro Forma Finance & Investment Analysis: 10 Stories states: "Required Equity: $5,000,000."  The Plaintiff investors were informed by Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL, both verbally and in writing, that no further capital contribution would be "required" of them.  At the time that Defendants BUCHHOLZ, FISCHER, and SOLOMON CAPITAL solicited and received the investments, however, Defendants were aware of the fact that the project was severely undercapitalized, in part due to the diversion of Plaintiffs' investments to the purchase of the raw land at a grossly inflated price that far exceeded its fair market value.  Defendants failed to disclose that information to Plaintiff investors.

134. Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, materially misrepresented the actual return or "profit" to the Plaintiff investors.

135. Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER, misrepresented the zoning for the project.

1    136.  Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER,

2    misrepresented the timeline for completion of the project and return of investment

3    capital and profits to the Plaintiff investors.

4    137.  Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER

5    misrepresented to the Plaintiff investors that they were buying into a viable investment

6    opportunity for a high rise condominium project.  The reality, however, was that

7    Defendants had already extracted any potential profits from the potential investment for

8    themselves through the fraudulent Enterprise.  The plaintiff investors were then left with

9    a project that was not viable since it was "under water," meaning that the debt on the

10    project so far outweighed its value that the development was not financially viable.

11    138.  Based on information and belief, the Enterprise was designed in a form or

12    fashion in which Defendants would purchase property in less desirable areas for market

13    rate, and then sell the property to investor groups for significantly more than the market

14    rate benefit from the distribution of ill gotten gains to the detriment of the Plaintiff

15    investors. .

16    139.  On July 24, 2007, the offices of Defendants SOLOMON CAPITAL,

17    BUCHHOLZ and FISCHER were raided by both state and federal authorities in

18    connection with a warrant to investigate allegations of defendants' "pump and dump"

19    sales and fraudulent investment schemes.  The Plaintiffs' first notice of the alleged

20    fraudulent activities being conducted by the Defendants was received subsequent to the

21    raid upon SOLOMON CAPITAL by the state and federal authorities.  The Plaintiffs

22    received a letter from the Office of the District Attorney postdated July 31, 2007

23    requesting their voluntary responses to a questionnaire about SOLOMON CAPITAL,

24    and Equity Enterprises, Inc.  The letter from Deputy District Attorney Michael

25    Fitzsimmons is dated July 25, 2007.  The receipt of the District Attorney's

26    correspondence was Plaintiffs' first notice that the aforementioned businesses were

27    under investigation for potential allegations of fraud.

28    140.  Based on information and belief, Defendants activities are presently under

1  investigation by the state and federal authorities in connection with Defendants'
2  activities and the Enterprise as defined and set forth herein.  Based on information and
3  belief, the pending indictment has not been dismissed.

4    141.  Based on information and belief, the state and federal authorities seized the
5  contents of the offices of Defendants SOLOMON CAPITAL, BUCHHOLZ and FISCHER
6  in connection with the state and federal investigation and the pending indictment.

7    142.  For a project in Gilbert, Arizona, Defendants also formed entities known as
8  SPIRIT AT SPECTRUM, LLC of which  ZELEZNAK was managing member, SPIRIT
9  INVESTORS, LLC, of which BUCHHOLZ was managing member, and PHOENIX
10  VALLEY DEVELOPMENT, LLC, of which BUCHHOLZ was managing member an entity
11  used by RON BUCHHOLZ to purchase land from Defendants, ZELEZNAK and VENTO
12  for $2,202,492 in March 2005, land for which ZELEZNAK and VENTO had paid
13  $900,000 in March 2004 and diverting funds to themselves as ill gotten gains.

14
15                          **F.  CHICAGO PROJECTS**
16

17    143.  Defendants formed OC INVESTORS, LLC, an Illinois limited liability
18  company of which BUCHHOLZ, CHARISE FISCHER, were the initial managers and
19  with DAYSTREAM COURTYARDS, LLC, and HYBELS, LLC, later represented to be
20  managers. OC INVESTORS, LLC, undertook to solicit investors on the basis of four
21  proposed projects in the Chicago Metropolitan area: (1) in Naperville (Naper
22  Courtyards), (2) in Hoffman Estates (Courtyards at Greenspoint), (3) in Itasca (Prospect
23  Courtyards), and (4) in Crystal Lake (Crystal Courtyards).

24    144.  Plaintiffs are informed and believe that CHICAGO CONDO FUND, LLC, is a
25  Delaware limited liability company controlled by  BUCHHOLZ and CHARISE FISCHER
26  and was a vehicle used by them to solicit funds on the basis of supposedly secured
27  promissory notes involving the purported projects in and around the Chicago
28  Metropolitan area.

145. Plaintiffs are informed and believe that HYBELS, LLC, is or was a Nevada limited liability company, of which Roland G. Lee was a manager.

146. Plaintiffs are also informed and believe that:

a. Defendants misrepresented the land cost acquisition for these purported projects, the estimated time of intended completion, the pro forma financial statements, the status of permits, and to the extent land was acquired, siphoned funds for personal and other misuse as stated below;

b. Defendants severely impaired, if not destroyed the financial viability of the four projects by cross-collateralization, impairing whatever equity may have existed and/or misrepresenting the value of the property so as to obtain mezzanine financing on the projects;

c. Using funds so raised for the purchase of property in Schaumberg, Lisle, and Elgin, Illinois solely for the benefit of BUCHHOLZ and FISCHER;

d. Using funds so raised to commence and further another aspect of the scheme by representing, after the fact, that more money than expected had been raised and that the excess funds had been used to undertake a project in Arizona generally known as "Arroyo Mountain" when in fact "Arroyo Mountain" was actually and formerly another RDB project called Deer Valley that never got built and money raised via OC INVESTORS, LLC, had been used to buy out the initial Deer Valley investors with a profit, Defendants then touting the success and profit in Deer Valley as further enticement in the solicitation of funds;

e. By taking undisclosed "management fees" and demanding kickbacks billed through a purportedly independent consulting named Alabanza, Inc., formerly a California corporation, dissolved in 2005, and controlled by CHARISE FISCHER, but still being represented as "her independent consulting firm" through which "she is actively involved in managing the development projects..."

Complaint, *Yu-Sze Yen, et al. v. Buchholz, et al.*                    Page 37 of 67

f.     Using funds to pay for expenses of other unrelated projects;

g.     Paying money to RNC HOLDINGS and representing it as repayment of loans, such loans never having been made by RNC HOLDINGS;

## G. COLORADO PROJECTS

147.  DAYSTREAM DEER CREEK, LLC, is a Nevada limited liability company purportedly formed for the purposes of purchasing an ownership interest in COURTYARDS AT DEER CREEK, LLC, regarding a project generally referred to as "Courtyards" that involved the purported purchase and development of land in Jefferson County, Colorado for multi-unit office condominiums.

148.  Plaintiffs are informed and believe that BUCHHOLZ and FISCHER were managers of COURTYARDS AT DEER CREEK, LLC; that 47.37% of the net profits of Courtyards were to be distributed to RNC Holdings, LLC; that RDB Development, LLC, an entity controlled by Ron Buchholz took a "development fee" of $600,000 without intention of ever performing services of such value; and that land cost for the project was grossly misrepresented.

149.  In writing and as part of efforts to solicit investors, SOLOMON CAPITAL stated it "is proud to present its latest investment opportunity, Colorado Condos Fund (CCF)." Plaintiffs are informed and believe that COLORADO CONDOS FUND, LLC, was formed as a Delaware limited liability company of which SOLOMON CAPITAL, INC., was a manager.

150.  Plaintiffs are informed and believe that BUCHHOLZ and FISCHER, as part of the purported Colorado Condos investments, used double escrows for land purchase and sale transactions in projects known as Cherry Creek and Deer Creek land purchases.

151.  Plaintiffs are informed and believe that one or more of these projects underwent name changes for the purpose of facilitating misrepresented status and

1  transactions and may have included, Courtyards at Cherry Creek, LLC, Courtyards at

2  Parker, Strawberry Tierra à Monta Vista,  LLC, Briarwood Properties, LLC, Clear Creek

3  South LLC, and Courtyards at Deer Creek, LLC.

4

5    **V.  COUNT 1:  VIOLATION OF SECTION 1962(A) OF THE RACKETEERING**

6        **INFLUENCED AND CORRUPT ORGANIZATION ACT OF 1970 ("RICO")**

7  (Against Defendants, BUCHHOLZ, FISCHER, SOLOMON CAPITAL, LDD, EEI,  EENI,

8  EEM, ALABANZA, INC., VENTO; GRACE, ZELEZNAK, ZPM, ZLOFT,  RDB, ZELTOR,

9  BERRY,  and DOES 1-100)

10

11       152.  Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 151,

12  inclusive, as though set forth fully herein.

13       153.  Defendants, and each of them, are RICO "persons," as that term is defined

14  in 18 U.S.C. § 1961(3).

15       154.  For purposes of this claim for relief, the RICO "Enterprise" is an ongoing

16  and continuing association-in-fact formed for the common shared purpose of defrauding

17  investors of real estate investment funds, including but not limited to, Plaintiffs, without

18  the consent or approval of the investors, and collecting profits from these illegal

19  activities.  Plaintiffs are informed and believe that Defendants, and each of them,

20  participated in the management or direction of the Enterprise.

21       155.  Based on information and belief, the specific internal corporate mechanisms

22  and operations by which Defendants carried out their fraudulent scheme, and the

23  specific activities engaged in by Defendants in furtherance of their fraudulent scheme,

24  are predominantly within the exclusive knowledge of Defendants, and DOES 1-100.  To

25  date, given the far-reaching, complex, and clandestine nature of Defendants' fraudulent

26  scheme, Plaintiffs have only been able to gather limited information regarding some

27  aspects of the fraudulent scheme.

28       156.  Based on information and belief, and at all relevant times, Defendants, and

1    each of them, violated RICO when they conducted or participated in affairs of the

2    Enterprise through a pattern of racketeering activity, by fraudulently or negligently

3    disclosing or failing to disclose material facts to investors and engaging in fraudulent

4    land sales and transfers that involve use of investor funds for purchase of land at highly

5    inflated and above-market prices.  Plaintiffs received their own ill-gotten gains via the

6    use of the U.S. mail and wires from the sale of the land described herein for

7    over-inflated values.

8        157.  Defendants have joined together with a common, shared purpose, or

9    community of interest, with an ongoing organization structure continuing throughout the

10   period of the time alleged herein, to collectively form an Enterprise, within the meaning

11   of 18 U.S.C. § 1961(4).

12       158.  Defendants have participated in the affairs of the Enterprise, and are all

13   involved in the conduct of the Enterprise.

14       159.  Defendants have used or caused to be used the mails and wires and

15   intrastate commerce in furtherance of their scheme and artifice to defraud purported

16   investors, including but not limited to Plaintiffs, by inducing them to place investments

17   with that were then used to purchase land at over-inflated and above-market values to

18   allow for the distribution of ill-gotten gains to Defendants herein.  The acts described

19   herein were without the Plaintiff investors' consent and were derived by means of false

20   and fraudulent pretenses, or representations, in violation of 18 U.S.C. §§ 1341 and

21   1343.  Defendants herein used negotiable instruments, mails, and wires in furtherance

22   of their fraudulent scheme.

23       160.  Defendants were fully aware, or should have been aware, that the investors

24   had not consented to the distribution of ill-gotten gains to Defendants herein arising

25   from the purchase and sale of land and property for over-inflated and above-market

26   rates for the benefit of Defendants herein.  Defendants herein continue their

27   participation in the fraudulent scheme with this knowledge.

28       161.  The acts of Defendants in defrauding Plaintiffs are now believed by

1  Plaintiffs to have been ongoing for at least several years and continue to date.

2      162.  Defendants defrauded Plaintiffs by luring them to place investments in

3  various real estate companies owned or operated by the Defendants, and used these

4  investments to purchase land and/or property for over-inflated and above-market

5  values, taking unconscionable fees for services never to be performed and/or for

6  purported compensation grossly in excess of fair market value, and other acts, while

7  Defendants simultaneously defrauded Plaintiffs by benefitting from the over-inflated and

8  above-market land sales and taking of fees.  The specifics of the transactions at issue

9  were never fully disclosed to Plaintiffs, and Plaintiffs did not have full knowledge of the

10  same.

11      163.  On information and belief, there is evidence establishing a sophisticated

12  pattern of fraud perpetrated by the Defendants in which the Defendants herein baited

13  Plaintiffs (and on information and belief, over 250 additional potential investors) with the

14  prospect of high investment returns, and then failed to deliver the promised returns,

15  instead using fraudulent land transfers to derive ill-gotten gains from Plaintiffs'

16  investments without their authority, knowledge, or consent, thereby leaving Plaintiffs

17  and other purported investors without the promised returns or land values to cover their

18  investments.

19      164.  The fraud perpetrated by Defendants  utilizing the tactics described herein,

20  in connection with their multiple dealings with Plaintiffs over the span of three to four

21  years and their active concealment of their activities was furthered by Defendants'  use

22  of the mails and wires, constitutes a pattern of racketeering activity within the meaning

23  of U.S.C. § 1961(5).

24      165.  The Enterprise alleged herein was, at all times mentioned herein, engaged

25  in activities which affect intrastate commerce.

26      166.  Defendants have received income derived from their participation in the

27  pattern of racketeering activities alleged herein.  That income consisted of the activities

28  derived by the Defendants wherein Defendants would defraud the Plaintiff investors of

1  their investments.  On information and belief, Defendants obtained income from other

2  putative investors consisting of over $1,000,000.00 of investment capital.

3      167.  Based on information and belief, this income, which Defendants herein

4  have received from their participation and racketeering activities, and the participation in

5  the Enterprise, has been used or invested in the operations of the Enterprise.

6      168.  On information and belief, Defendants used the proceeds from their

7  racketeering activity to further fund and operate Enterprises under Defendants' name.

8  The Enterprises were entitled, but not limited to, SOLOMON CAPITAL, RNC, LDD, EEI,

9  EENI, EEM, ALABANZA, INC., GRACE, ZPM, KWR, Z-LOFT, FCC, RDB, ZELTOR,

10  LCC, VI, and VFT.

11      169.  Defendants' use of an investment of such income is a cause of Plaintiffs'

12  injuries, and Plaintiffs were injured by reason of Defendants' use of an investment of,

13  such income arising from Defendants' wrongful acts of defrauding Plaintiffs through the

14  purchase and sale of property at over-inflated and above-market rates, improperly

15  taking fees, and other acts.

16      170.  As a result of the alleged acts and activities of Defendants  Plaintiffs have

17  been injured in their business and property.  Plaintiffs have incurred and continue to

18  incur legal fees and costs for the prosecution of the instant matter in an attempt to

19  recoup their investment capital.  These amounts include interest and costs to recover

20  Plaintiffs' losses and any potential judgments against Defendants in the pending

21  lawsuit.

22      171.  Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover three

23  times their actual damages, plus attorneys' fees and costs.

24      172.  WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs and against

25  Defendants as hereinafter set forth.

26                    /////

27                    /////

28                    /////

## VI.  COUNT 2:  VIOLATION OF SECTION 1962(C) OF THE RICO ACT

(Against Defendants, BUCHHOLZ, FISCHER, SOLOMON CAPITAL, LDD, EEI,  EENI, EEM, ALABANZA, INC., VENTO; GRACE, ZELEZNAK, ZPM, ZLOFT,  RDB, ZELTOR, BERRY,  and DOES 1-100)

173.  Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 172, inclusive, as though fully set forth herein.

174.  Defendants were and are employed by, or associated with the Enterprise. Furthermore, Defendants have participated in the conduct of the affairs of the Enterprise.

175.  Defendants have participated in the conduct of the affairs of the Enterprise by leading, running, managing, and/or directing the affairs of the Enterprise by initiating and formulating the process by which Defendants herein would bait Plaintiffs and other potential investors by offering them investments in which Plaintiffs were informed that they would receive a rate of return on the investments that were later subject to fraud by Defendants' over-inflated and above-market property transactions and sales that were operated to defraud Plaintiffs of their investment and provide Defendants with ill-gotten gains from the property transfers and/or sale.  Defendants knew, or should have known, that their representations to Plaintiffs in that regard were false and fraudulent.

176.  Defendants have participated in the conduct of the affairs of the Enterprise through a pattern of racketeering activity.  On information and belief, there is evidence indicating a sophisticated pattern of fraud by Defendants in which the Defendants induced the Plaintiff investors to invest with SOLOMON CAPITAL, who in turn purchased land and/or property from Defendants for over-inflated and above-market prices in order to allow for Defendants to share in the profits from the sales and to garner ill-gotten gains from Plaintiffs' investments through the perpetration of fraud.

177.  As a result of the alleged acts and activities of Defendants and DOES 1-50, Plaintiffs have been injured in their business and property.  Plaintiffs have been

1  defrauded of their investment capital.  Further, Plaintiffs have incurred and continue to
2  incur legal fees and costs for the prosecution of this matter.

3      178.  Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover three
4  times their actual damages plus attorneys' fees and costs.

5      179.  WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs and against
6  Defendants as hereinafter set forth.

7

8      **VII.  COUNT 3:  VIOLATION OF SECTION 1962(D) OF THE RICO ACT**
9  (Against Defendants, BUCHHOLZ, FISCHER, SOLOMON CAPITAL, LDD, EEI,  EENI,
10  EEM, ALABANZA, INC., VENTO; GRACE, ZELEZNAK, ZPM, ZLOFT,  RDB, ZELTOR,
11  BERRY,  and DOES 1-100)

12

13      180.  Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 179,
14  inclusive, as though fully set forth herein.

15  .    181.  Defendants have conspired between themselves to use or invest the
16  proceeds from their activities to either acquire an interest in, or establish, or operate an
17  Enterprise, the activities of which affect interests of intrastate commerce.

18      182.  Defendants participated in the conduct of the affairs of the Enterprise by
19  leading, running, managing, and/or directing the affairs of the Enterprise by initiating
20  and/or formulating the process by which Defendants would bait Plaintiffs and other
21  purported investors by offering them investments with a proffered rate of return.  On
22  information and belief, Defendants would then engage in the purchase and/or sale of
23  land for over-inflated or above market rates in order to defraud the investors of their
24  investment capital to Defendants' benefit.  Defendants knew that their representations
25  and/or misrepresentations in that regard were false and fraudulent.

26      183.  The conduct of Defendants outlined above further evidences and satisfies
27  the Enterprise prong of 18 U.S.C. § 1962(a) of a RICO cause of action.  The proceeds
28  from this activity were then used to further the same racketeering activities and

1  establish and operate further racketeering activities of the Enterprise under 18 U.S.C. §

2  1962(a) of a RICO cause of action.

3      184.  Plaintiffs are informed and believe, and on that basis allege, that Plaintiffs

4  agreed to invest, and did invest, investments with Defendants based upon Defendants'

5  representations and misrepresentations that they were paying fair market value for the

6  land to be purchased by Defendants and that Plaintiffs would receive a rate of return on

7  their investments.  Plaintiffs were lured into transactions believing that Defendants were

8  paying fair market value for the land subject to the investment when Defendants had, in

9  fact, agreed and engineered an Enterprise to purchase the land at highly inflated or

10 above-market rates in order to defraud the investors and garner ill-gotten gains for the

11 Defendants' benefit.  The proceeds from this wrongful activity were then used by

12 Defendants to further the same racketeering activity evidenced herein.  The use of

13 proceeds from earlier racketeering activity to further establish and operate Defendants'

14 ongoing racketeering activities satisfies the requirements of an Enterprise under 18

15 U.S.C. § 1962(a).

16     185.  As a result of the alleged acts and activities of Defendants and DOES 1-50,

17 Plaintiffs have been injured in their business and property.  Plaintiffs have incurred and

18 continue to incur legal fees and costs for the prosecution of this matter.

19     186.  Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover three

20 times their actual damages, plus attorneys' fees and costs.

21 WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs and against Defendants

22 as hereinafter set forth.

23

24     **VIII.  COUNT 4:  VIOLATION OF SECTION 10B AND RULE 10B-5 OF THE**

25             **SECURITIES EXCHANGE ACT OF 1934**

26 (Against Defendants, BUCHHOLZ, FISCHER, SOLOMON CAPITAL, LDD, EEI,  EENI,

27 EEM, GRACE, ZELEZNAK, ZPM,  KWR, Z-LOFT, RDB, ZELTOR, LCC,  BERRY,  and

28 DOES 1-100)

187. Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 186, inclusive, as though fully set forth herein.

. 188. Defendants engaged in a scheme to secure money from investors that included the purchase of land at highly inflated or above-market rates and disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

189. Defendants violated §10(b) and Rule 10b-5 of the 1934 Act in that they:

(a) Employed devices, schemes and artifices to defraud Plaintiffs;

(b) Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) Engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs with Defendants' purchases of land at highly inflated or above-market rates using investor funds.

190. Plaintiffs have suffered damages in that, in reliance on Defendants' representations including, but not limited to, their investments were used to pay an artificially inflated or above-market price for the Solomon Towers Property. Plaintiffs would not have invested in the Property at the rate presented, or at all, if they had been aware that the purchase price for the land had been artificially and falsely inflated as part of Defendants' scheme.

191. As a direct and proximate result of Defendants' violation of §10(b) and Rule 10b-5 of the 1934 Act, Plaintiffs have been injured in their business and property. Portions of Plaintiffs' investments have been transferred to the Defendants or third parties in the form of wrongfully earned sales prices for land purchased at over inflated or above-market values, commissions on the land sales, closing fees and costs, and development costs on over-encumbered land. Plaintiffs have incurred and continue to

1  incur legal fees and costs to recover such losses and any potential judgments against

2  Defendants in the pending lawsuits.

3      192.  WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs and against

4  Defendants as hereinafter set forth.

5

6  **IX.  COUNT 5:  VIOLATION OF SECTION 12(A) OF THE SECURITIES ACT OF 1933**

7  (Against Defendants, BUCHHOLZ, FISCHER, SOLOMON CAPITAL, LDD, EEI, EENI,

8  EEM, GRACE, ZELEZNAK, ZPM, KWR, Z-LOFT, RDB, ZELTOR, LCC, BERRY, and

9  DOES 1-100)

10

11      193.  Plaintiffs re-allege and incorporate by reference paragraphs 1 through 192

12  inclusive, as though set forth fully herein.

13      194.  Defendants violated 15 U.S.C. § 77l  in that they:

14      (a)    Offered to sell a security by oral communication; and,

15      (b)    Made untrue statements of material facts and omitted to state material

16          facts necessary in order to make the statements made, in light of the

17          circumstances under which they were made, not misleading.

18      195.  Plaintiffs suffered damages in that, in reliance on the statements of

19  Defendants, including, but not limited to, Plaintiffs' investment funds were used to pay a

20  highly inflated or above-market price for the Property.  Plaintiffs would not have invested

21  in the Property at the rate presented, or at all, if they had been aware that the purchase

22  price for the land had been artificially and falsely inflated as part of Defendants'

23  scheme.

24      196.  As a direct and proximate result of Defendants' violation of §12(a) of the

25  1933 Act, Plaintiffs have been injured in their business and property.  Portions of

26  Plaintiffs' investments have been transferred to the Defendants or third parties in the

27  form of wrongfully earned sales prices for land purchased at over inflated or

28  above-market values, commissions on the land sales, closing fees and costs, and

1  development costs on over-encumbered land.  Plaintiffs have incurred and continue to

2  incur legal fees and costs to recover such losses and any potential judgments against

3  Defendants in the pending lawsuits.  As a direct and proximate result of Defendants'

4  wrongful conduct, Plaintiffs are entitled to restitution of all monies invested with

5  Solomon Capital, with interest thereon.

6      197.  WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs and against

7  Defendants as hereinafter set forth.

8

## X.  COUNT 6:  VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200, ET SEQ.

11  (Against Defendants, BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RNC, LDD, EEI,

12  EENI, EEM, ALABANZA, INC., VENTO, GRACE, ZELEZNAK, ZPM,  KWR, Z-LOFT,

13  WILLIAM E. BUCHHOLZ, FCC, RDB, ZELTOR, LCC, VI, BERRY, VFT, and DOES 1-

14  100)

15

16      198.  Plaintiffs re-allege and incorporate by reference paragraphs 1 through 197

17  inclusive, as though set forth fully herein.

18      199.  The acts, omissions, misrepresentations, practices, and non-disclosures of

19  Defendants  as alleged herein constituted unlawful, unfair, and fraudulent business acts

20  and practices within the meaning of California Business and Professions Code § 17200,

21  et seq.

22      200.  Plaintiffs agreed to invest, and in fact did invest with Defendants based

23  upon Defendants' representations and misrepresentations that included, but were not

24  limited to, they were paying fair market value for the land to be purchased by

25  Defendants and that Plaintiffs would receive a rate of return on their investments.

26  Plaintiffs were lured into transactions believing that Defendants were paying fair market

27  value for the land subject to the investment when Defendants had, in fact, agreed and

28  engineered to purchase the land at highly inflated or above-market rates in order to

1  defraud the investors and garner ill-gotten gains for the Defendants' benefit. The

2  proceeds from this wrongful activity were then used by Defendants to continue to

3  perpetrate the fraud upon other investors. Defendants' deception constitutes a

4  fraudulent business practice under the California Unfair Competition Law in that

5  Defendants failed to disclose these fraudulent practices to investors prior to investment.

6     201.  As a result of the foregoing, pursuant to California Business & Professions

7  Code §17203, Plaintiffs seek an Order of this Court requiring Defendants to immediately

8  cease such acts of unfair competition and enjoining Defendants from continuing to take

9  investments from investors. Plaintiffs additionally request an Order of this Court

10 requiring the payment or return of any monies wrongfully acquired, saved, or retained

11 by Defendants by means of such acts of unfair competition so as to restore to Plaintiffs

12 any and all monies which were acquired and obtained by means of such acts of unfair

13 competition and/or as may be necessary to prevent the use or employment of any

14 practices which constitutes unfair competition, as well as imposing an asset freeze or a

15 constructive trust over such monies.

16    202.  Therefore, Plaintiffs seek an Order of this Court for all appropriate available

17 remedies under California Business & Professions Code §17203.

18    203.  WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs and against

19 Defendants as hereinafter set forth.

20

21          **XI. COUNT 7:  BREACH OF FIDUCIARY DUTY**

22 (Against Defendants, BUCHHOLZ, FISCHER, SOLOMON CAPITAL, WILLIAM E.

23 BUCHHOLZ, FCC, and DOES 1-100)

24

25    204.  Plaintiffs re-allege and incorporate by reference paragraphs 1 through 203

26 inclusive, as though set forth fully herein.

27    205.  Defendants SOLOMON CAPITAL, BUCHHOLZ, and FISCHER had a

28 special relationship with all Plaintiffs, in that Defendants assumed a fiduciary position in

1  relation to the investors as investment advisers, trustees of the accounts, and

2  managers, managing partners of projects, ventures, and the limited liability companies.

3  As such, Defendants were fiduciaries as to Plaintiffs.  Defendants breached their

4  fiduciary duty to Plaintiffs by failing to make full disclosure of all material facts

5  concerning the transactions that might have affected Plaintiffs' investment decisions.

6  The Plaintiffs' losses were caused by and have resulted directly from the action,

7  misrepresentations, and omissions of Defendants.

8      206.  Defendants, WILLIAM E. BUCHHOLZ, and FCC, had a special relationship

9  with  Plaintiffs, Mike Brogdon and Renee Brogdon; James Bryson; Wayne Canto and

10  Candise Canto; Kwei Choong; Mark Delman and Kathleen Delman; Eric Gold; Jerry

11  Hughes and Rhonda Hughes; Irvin Urbanski and Yolanda Urbanski; Bob Winger and

12  Nancy Winger arising out of or related to their participation in worship within FCC that

13  constitutes a fiduciary relationship and/or equivalent based on the relationship of faith,

14  trust, and confidence.

15      207.  As fiduciaries, Defendants owed a duty of utmost care, integrity, honesty

16  and loyalty toward Plaintiffs.  Defendants breached their fiduciary duty to Plaintiffs by,

17  among other things, misrepresenting that Defendants were paying fair market value for

18  the land to be purchased by Defendants and that Plaintiffs would receive a rate of return

19  on their investments.  Plaintiffs were lured into transactions believing that Defendants

20  were paying fair market value for the land subject to the investment when Defendants

21  had, in fact, agreed and engineered to purchase the land at highly inflated or

22  above-market rates in order to defraud the investors and garner ill-gotten gains for the

23  Defendants' benefit.  The proceeds from this wrongful activity were then used by

24  Defendants to continue to perpetrate the fraud upon other investors.

25      208.  Defendants, WILLIAM E. BUCHHOLZ, and FCC, breached the duties to

26  Plaintiffs, Mike Brogdon and Renee Brogdon; James Bryson; Wayne Canto and

27  Candise Canto; Kwei Choong; Mark Delman and Kathleen Delman; Eric Gold; Jerry

28  Hughes and Rhonda Hughes; Irvin Urbanski and Yolanda Urbanski; Bob Winger and

1  Nancy Winger by soliciting them to invest on the basis of promises affecting their

2  relationship with and obligations to FCC and otherwise

3      209.  As a direct and proximate result of the breach of fiduciary duty by

4  Defendants, Plaintiffs have been injured in their business and property.  Portions of

5  Plaintiffs' investments have been transferred to the Defendants or third parties in the

6  form of wrongfully earned sales prices for land purchased at over inflated or

7  above-market values, commissions on the land sales, closing fees and costs, and

8  development costs on over-encumbered land.  Plaintiffs have incurred and continue to

9  incur legal fees and costs to recover such losses and any potential judgments against

10  Defendants in the pending lawsuits.

11      210.  The Defendants' conduct as described above, involved malice, oppression

12  and fraud, and such conduct was clearly despicable.  Such despicable and fraudulent

13  conduct was plainly conducted by the individual defendants as officers, directors, and/or

14  managing agents of these entity Defendants and/or was ratified by the entity

15  defendants.  Accordingly, the Court should assess punitive damages against these

16  Defendants.

17      211.  WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs and against

18  Defendants as hereinafter set forth.

19

20          **XII.  COUNT 8:  BREACH OF CONTRACT**

21  (Against Defendants, BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RNC, LDD, EEI,

22  EENI, EEM, ALABANZA, INC., Z-LOFT, RDB, ZELTOR, LCC, and DOES 1-100)

23

24      212.  Plaintiffs re-allege and incorporate by reference paragraphs 1 through 211

25  inclusive, as though set forth fully herein.

26      213.  In or about March 2005, Defendants commenced causing Plaintiffs to enter

27  into Operating Agreements and loan transactions.

28      214.  As part of the Operating Agreements, Defendant managers BUCHHOLZ,

1  FISCHER, and entities managed by them via entities acting as managers that were in

2  turn controlled by Defendants, agreed, among other things, to use company funds only

3  to further the purposes of the pertinent company, not to commingle funds, not to

4  knowingly perform any act that contravened the Operating Agreement or was

5  inconsistent with the purposes of the company, and to keep accurate books and records

6      215.  Defendants breached the Operating Agreements with Plaintiffs by, among

7  other things, commingling the company's funds with their own, and using the funds for

8  things other than those in furtherance of the purposes of the company, such as a one

9  million dollar commission payment to Defendants' real estate broker, Defendant

10 ZELEZNAK (who was also the owner of the land being purchased in the related

11 transaction).  In addition, Defendants concealed this commingling and misuse of

12 investor funds by keeping inaccurate or incomplete financial books and records and

13 providing false and misleading oral and written information to Plaintiffs.  As a result,

14 Plaintiffs were lured into transactions believing that Defendants were paying fair market

15 value for the land subject to the investment when Defendants had, in fact, agreed and

16 engineered to purchase the land at highly inflated or above-market rates in order to

17 defraud the investors and garner ill-gotten gains for the Defendants' benefit and

18 otherwise siphon investor funds by improper method.  The proceeds from this wrongful

19 activity were then used by Defendants to continue to perpetrate further fraud upon

20 investors.

21     216.  As a direct and proximate result of the breaches of the pertinent Operating

22 Agreements by Defendants, Plaintiffs have been injured in their business and property.

23 Portions of Plaintiffs' investments have been transferred to the Defendants or third

24 parties in the form of wrongfully earned sales prices for land purchased at over inflated

25 or above-market values, commissions on the land sales, closing fees and costs, and

26 development costs on over-encumbered land.  Plaintiffs have incurred and continue to

27 incur legal fees and costs to recover such losses and any potential judgments against

28 Defendants in the pending lawsuits.

217.  WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs and against Defendants as hereinafter set forth.

## XIII.  COUNT 9:  BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

(Against Defendants, BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RNC, LDD, EEI, EENI, EEM, ALABANZA, INC., Z-LOFT, RDB, ZELTOR, LCC, and DOES 1-100)

218.  Plaintiffs re-allege and incorporate by reference paragraphs 1 through 217 inclusive, as though set forth fully herein.

219.  Implied within every contract is an implied covenant of good faith and fair dealing.

220.  Defendants unfairly frustrated Plaintiffs' right to receive the benefits due under the parties' agreements by the acts and omissions alleged herein, which constituted a breach the implied covenant of good faith and fair.

221.  As a proximate cause of Defendants' breaches of the parties' written, oral and implied agreements, Plaintiffs have incurred general and special damages according to proof at trial including those alleged herein.

222.  WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs and against Defendants as hereinafter set forth.

## XIV.  COUNT 10:  NEGLIGENT MISREPRESENTATION

(Against Defendants, BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RNC, LDD, EEI, EENI, EEM, ALABANZA, INC., ZELEZNAK, ZPM,  KWR, and DOES 1-100)

223.  Plaintiffs re-allege and incorporate by reference paragraphs 1 through 222, inclusive, as though set forth fully herein.

224.  Defendants and through their agents, officers, directors, and employees, represented and promised Plaintiffs, among other things, that Defendants were paying

fair market value for the land to be purchased by Defendants and that Plaintiffs would receive a rate of return on their investments. Plaintiffs were lured into transactions believing that Defendants were paying fair market value for the land subject to the investment when Defendants had, in fact, agreed and engineered to purchase the land at highly inflated or above-market rates in order to defraud the investors and garner ill-gotten gains for the Defendants' benefit. The proceeds from this wrongful activity were then used by Defendants to continue to perpetrate further fraud upon investors.

225. Defendants made these misrepresentations to induce Plaintiffs into purchasing the subject investments and securities from the company Defendants.

226. At the time the Defendants made these written and oral misrepresentations, Defendants knew or should have known that they were not true. Defendants knew or should have known that they could not fulfill these promises.

227. Plaintiffs reasonably relied upon these written and oral statements in purchasing the investments and securities, without any knowledge Defendants had, in fact, agreed and engineered to purchase the land at highly inflated or above-market rates in order to defraud the investors and otherwise garner ill-gotten gains for the Defendants' benefit. Had Plaintiffs known the truth, Plaintiffs would never have purchased the investments and securities from Defendants.

228. As a direct and proximate result of the acts and omissions of Defendants, Plaintiffs have been injured in their business and property. Portions of Plaintiffs' investments have been transferred to the Defendants or third parties in the form of wrongfully earned sales prices for land purchased at over inflated or above-market values, commissions on the land sales, closing fees and costs, development costs on over-encumbered land. Plaintiffs have incurred and continue to incur legal fees and costs to recover such losses and any potential judgments against Defendants in the pending lawsuits.

229. WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs and against Defendants as hereinafter set forth.

## XV.  COUNT 11:  INTENTIONAL MISREPRESENTATION

(Against Defendants, BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RNC, LDD, EEI, EENI, EEM, ALABANZA, INC., ZELEZNAK, ZPM,  KWR, and DOES 1-100)

230.  Plaintiffs re-allege and incorporate by reference paragraphs 1 through 229, inclusive, as though fully set forth herein.

231.  Defendants and through their agents, officers, directors, and employees, represented and promised Plaintiffs, among other things, that Defendants were paying fair market value for the land to be purchased by Defendants and that Plaintiffs would receive a rate of return on their investments.  Plaintiffs were lured into transactions believing that Defendants were paying fair market value for the land subject to the investment when Defendants had, in fact, agreed and engineered to purchase the land at highly inflated or above-market rates in order to defraud the investors and garner ill-gotten gains for the Defendants' benefit.  The proceeds from this wrongful activity were then used by Defendants to continue to perpetrate the fraud upon other investors.

232.  At the time that the Defendants made these written and oral representations to Plaintiffs, they knew that they were not true.  Defendants in fact had no intention of fulfilling these promises and instead used this deception to trick Plaintiffs into purchasing investments and securities when Defendants had no intention of purchasing land at fair market value for the benefit of the Plaintiff investor.  Instead, Defendants intended to and did purchase overly inflated land at above market rates, in order to defraud the investors and garner ill-gotten gains for the Defendants' benefit.  Certain proceeds from this wrongful activity were then used by Defendants to continue to perpetrate further fraud upon investors.

233.  Plaintiffs reasonably relied upon these written and oral statements in purchasing the investments and securities, without any knowledge that Defendants intended to and did purchase overly inflated land at above market rates, in order to defraud the investors and otherwise garner ill-gotten gains for the Defendants' benefit.

1  Had Plaintiffs known the truth, Plaintiffs would never have purchased the investments

2  and securities for any purpose whatsoever.

3      234.  As a direct and proximate result of Defendants' misrepresentations and

4  concealment, Plaintiffs have been injured in their business and property.  Portions of

5  Plaintiffs' investments have been transferred to the Defendants or third parties in the

6  form of wrongfully earned sales prices for land purchased at over inflated or

7  above-market values, commissions on the land sales, closing fees and costs,

8  development costs on over-encumbered land.  Plaintiffs have incurred and continue to

9  incur legal fees and costs to recover such losses and any potential judgments against

10  Defendants in the pending lawsuits.

11      235.  The Defendants' conduct as described above, involved malice, oppression

12  and fraud, and such conduct was clearly despicable.  Such despicable and fraudulent

13  conduct was plainly conducted by the individual defendants as officers, directors, and/or

14  managing agents of these entity Defendants and/or was ratified by the entity

15  defendants.  Accordingly, the Court should assess punitive damages against these

16  Defendants.

17      236.  WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs and against

18  Defendants as hereinafter set forth.

19

20          **XVI.  COUNT 12:  CONSPIRACY**

21  (Against Defendants, BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RNC, LDD, EEI,

22  EENI, EEM, ALABANZA, INC., VENTO; GRACE, ZELEZNAK, ZPM,  KWR, Z-LOFT,

23  RDB, ZELTOR, LCC, VI, BERRY, VFT, and DOES 1-100)

24

25      237.  Plaintiffs re-allege and incorporate by reference paragraphs 1 through 236

26  inclusive, as though set forth fully herein.

27      238.  On information and belief, and now ongoing for at least several years, and

28  perhaps earlier, Defendants, and each of them, knowingly and willfully conspired and

1    agreed among themselves to sell real property to the Plaintiff investors for prices

2    significantly over market value while promising fair returns on the investment, then to

3    collect profits from the investments, leaving the properties severely undercapitalized,

4    and leaving the investors with no return on their investment and otherwise siphon

5    investor money.

6        239.  Defendants' activities constituted a "Ponzi scheme" involving the

7    "OPERATORS" and the "FACILITATORS" and entities controlled by them, that

8    purchased the land in advance in preparation for later sale to the investors at a highly

9    inflated price, and the "AGENT and BROKER" (ZELEZNAK, ZPM, and KWR) that

10   facilitated the transactions and received, in some instances, 20% (twenty percent)

11   commission rates.  Under the guise of purporting to offer real estate investment

12   opportunities for qualified clients and professing expertise in real estate development,

13   Defendants created a pool of investment money by creating a nearly indiscernible web

14   of entities, transactions, and relationships between and controlled by them so as to

15   divert funds to themselves as ill gotten gains. The proceeds from this fraudulent

16   Enterprise were then used by Defendants to perpetrate further fraud upon investors.

17       240.  Defendants did the acts and things alleged herein pursuant to, and in

18   furtherance of, the conspiracy and above-alleged agreement.

19       241.  Plaintiffs did not have knowledge of the above-described conspiracy at the

20   time it was taking place.  Plaintiffs could not have discovered the above-described

21   conspiracy in the exercise of reasonable diligence because Plaintiffs were not

22   sophisticated investors, because Plaintiffs relied on Defendants upholding their fiduciary

23   duty to Plaintiffs, and because Defendants concealed their activities between several

24   parties and fictional entities.  The first suspicion of any of the Plaintiffs first arose on July

25   24, 2007 as a result of the raid at a place of business used by one or more of the

26   defendants, then followed by contact initiated by the Santa Clara County District

27   Attorney's office relative to its investigation of Defendants' activities.

28   242.  As a proximate result of the wrongful acts herein alleged, Plaintiffs have

Complaint; *Yu-Sze Yen, et al. v. Buchholz, et al.*                          Page 57 of 67

been damaged through the loss of their initial investments, as well as subsequent capital contributions.

243.  The Defendants' conduct as described above, involved malice, oppression and fraud, and such conduct was clearly despicable.  Such despicable and fraudulent conduct was plainly conducted by the individual defendants as officers, directors, and/or managing agents of these entity Defendants and/or was ratified by the entity defendants.  Accordingly, the Court should assess punitive damages against these Defendants.

244.  WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs and against Defendants as hereinafter set forth.

## XVII. COUNT 13:  ALTER EGO

(Against Defendants, BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RNC, LDD, EEI, EENI, EEM, ALABANZA, INC., VENTO; GRACE, ZELEZNAK, ZPM, KWR, Z-LOFT, RDB, ZELTOR, LCC, VI, BERRY, VFT, and DOES 1-100)

245.  Plaintiffs re-allege and incorporate by reference paragraphs 1 through 244 inclusive, as though fully set forth herein.

246.  On information and belief, there exists, and at all times herein mentioned there existed, a unity of interest and ownership between Defendants such that any individuality and separateness between Defendants has ceased, and the entity Defendants are the alter egos of individual Defendants.

247.  The individual Defendants used assets of the entity Defendants and other entities created and controlled by them for their personal uses, caused assets of the corporations to be transferred to them without adequate consideration, undercapitalized the corporate investments, and withdrew funds from the corporation's bank accounts for their own personal use.

248.  Defendants BUCHHOLZ and FISCHER used funds from SOLOMON

1  CAPITAL, in connection with RDB DEVELOPMENT for their own personal residences

2  and vehicles and/or applied funds from SOLOMON CAPITAL accounts in furtherance of

3  Defendants' fraudulent Enterprise, as described herein.

4      249.  On information and belief, the entity Defendants  and other entities created

5  and controlled by the individual Defendants, were mere shells, instrumentalities, and

6  conduits through which the individual Defendants carried on the Enterprise and their

7  fraudulent investment business in the names of corporations, limited liability companies

8  and other entities, exercising complete control and dominance of such entities to such

9  an extent that any individuality or separateness of the entity Defendants does not, and

10  at all times herein mentioned did not, exist.

11      250.  Therefore, Plaintiffs request that this Court disregard the legal formalities of

12  entity Defendants and other entities created and/or controlled by Defendants used by

13  them in furtherance of the Enterprise, conspiracies, and/or fraud.

14      251.  WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs and against

15  Defendants as hereinafter set forth.

16

17  **XVIII. COUNT 14:  FRAUD**

18  (Against Defendants, BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RNC, LDD, EEI,

19  EENI, EEM, ALABANZA, INC., VENTO; GRACE, ZELEZNAK, ZPM,  KWR, Z-LOFT,

20  RDB, ZELTOR, LCC, VI, BERRY, VFT, and DOES 1-100)

21

22      252.  Plaintiffs re-allege and incorporate by reference paragraphs 1 through 251

23  inclusive, as though fully set forth herein.

24      253.  Defendants failed to disclose the facts alleged herein, all of which were

25  within their knowledge at the time that Plaintiffs rendered their investments.  Defendants

26  made false and misleading representations to Plaintiffs including, but not limited to,

27  those concerning the fair market value of the Property as alleged herein, and the fact

28  that Defendants and those involved in the Enterprise would benefit in a manner

undisclosed to Plaintiffs. Defendants took affirmative actions in order to prevent Plaintiffs from discovering the value of the Property, including, but not limited to, those misrepresentations by omission of material facts regarding the value of the Property at the time of purchase, and the fact that the Property was being purchased from known associates of Defendants.

254. Defendants knew that the representations alleged herein were false and misleading at the time they were made.

255. Defendants made the aforesaid representations and others with an intent to defraud and intentionally mislead Plaintiffs, and to induce Plaintiffs to act in reliance on these representations, including causing Plaintiffs to place investments with Defendants for the purchase of the Property.

256. Plaintiffs were unaware of the falsity and intentionally misleading nature of the aforementioned representations, including, but not limited to the misrepresentations by omission of material facts, and justifiably acted in reliance upon the aforesaid representations. Plaintiffs' reliance was justifiable based upon the fiduciary relationship that Defendants had assumed with Plaintiffs and Plaintiffs, therefore, had a responsibility to fully disclose all information concerning the projects and investments to Plaintiffs in a full and truthful manner.

257. As a direct and proximate result of Defendants' false and intentionally misleading representations and concealment of the facts as alleged herein, Plaintiffs have been damaged and are entitled to compensation in an amount to be determined according to proof. Such damages include, but are not limited to, the loss of investment obtained by fraud and loss of interest on the investment capital.

258. Furthermore, as a result of Defendant's intentionally false and misleading representations, Plaintiffs are entitled to exemplary and punitive damages.

259. WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs and against Defendants as hereinafter set forth.

/////

## XIX.  COUNT 15: CONSTRUCTIVE FRAUD

(Against Defendants, BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RNC, LDD, EEI, EENI, EEM, ALABANZA, INC., VENTO; GRACE, ZELEZNAK, ZPM, KWR, Z-LOFT, RDB, ZELTOR, LCC, VI, BERRY, VFT, and DOES 1-100)

260.  Plaintiffs re-allege and incorporate by reference paragraphs 1 through 259 inclusive, as though fully set forth herein.

261.  In their respective roles as the issuers of the unqualified securities and as the managing members of projects, and participation in the Enterprise, Defendants individually and collectively owed to Plaintiffs certain duties to make the fullest disclosure of all material facts that might affect Plaintiffs' decision to provide money.

262.  Defendants failed to disclose the facts alleged herein, all of which were within their knowledge at the time that Plaintiffs rendered their investments.  Defendants made false and misleading representations to Plaintiffs including, but not limited to, those concerning the fair market value of the Property as alleged herein, and the fact that Defendants and those involved in the Enterprise would benefit in manners undisclosed to Plaintiffs.  Defendants took affirmative actions in order to prevent Plaintiffs from discovering the value of projects and property, including, but not limited to, misrepresentations by omission of material facts regarding the value of the projects and property at the time of purchase, and the fact that projects and property were being purchased from known associates of Defendants.

263.  Plaintiffs were unaware of the falsity and intentionally misleading nature of the aforementioned representations, including, but not limited to the misrepresentations by omission of material facts, and justifiably acted in reliance upon the aforesaid representations.  Plaintiffs' reliance was justifiable based upon the fiduciary relationship that Defendants had assumed with Plaintiffs.  Defendants, therefore, had a responsibility to fully disclose all information concerning the projects and investments to Plaintiffs in a full and truthful manner.

264.  At all times mentioned herein, Plaintiffs were unaware of the existence of the aforementioned material misrepresentations and omissions of material facts.

265.  As a result of Defendants' failure to make full disclosure of material facts as well as Defendants' misrepresentation of material facts that might have affected Plaintiffs' decision to provide money to Defendants for use in projects, Plaintiffs did, in fact, transfer the funds to Defendants and have been damaged and are now entitled to compensation in an amount to be determined according to proof.  Such damages include, but are not limited to, actual damages, interest thereon, punitive damages, attorney's fees, and other damages according to proof.

266.  WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs and against Defendants as hereinafter set forth.

## XX.  COUNT 16:  RESCISSION BASED ON MATERIAL MISREPRESENTATION AND SECURITIES TRANSACTION PURSUANT TO CALIFORNIA CORPORATIONS CODE SECTIONS 25501 AND 25401

(Against Defendants, BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RNC, LDD, EEI, EENI, and DOES 1-100)

267.  Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 266 inclusive, as though fully set forth herein.

268.  Beginning around February 2005, Defendants BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RNC, LDD, EEI,  EENI, in Santa Clara County, California, offered and sold to Plaintiffs and investors a total of approximately $6,700,000.00 of promissory notes and membership interests in the various limited liability companies and projects.  The transactions were made by means of both a written and oral presentation and communication which contained misleading information and omitted to state material facts necessary in order to make the statements made in that communication, in light of the circumstances under which they were made, not

misleading. Among other things, the communications failed to set forth that land being purchased would be done so at an over-inflated and above fair market value price so as to provide secret profits to Defendants.

269. Defendants failed to disclose the pre-existing relationship among the Defendants in the various projects and the entities controlled by them. The failure to disclose constitutes a material omission.

270. The participating Defendants and/or their related companies qualify as materially aiding personnel under the California Corporations Code and are, therefore, jointly and severally liable under the Code.

271. As a result of the material misrepresentations and omissions, Plaintiffs are entitled to rescind the above-described purchases of promissory notes and membership interests in the various entities and in Solomon Towers, LLC.

272. Plaintiffs will tender to Defendants their promissory notes and/or membership interests for the above-described securities as purchased from Defendants and on which to date Plaintiffs are entitled to receive the amounts as alleged herein.

273. Therefore, Plaintiffs seek an Order of this Court for the appropriate available remedy of rescission and return of Plaintiffs' investment capital with interest from the date of the investment pursuant to California. Corporations Code §§ 25501 and 25401.

274. WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs and against Defendants as hereinafter set forth.

## XXI. COUNT 17: JOINT AND SEVERAL LIABILITY OF MANAGEMENT PRINCIPALS AND MATERIALLY AIDING PERSONNEL PURSUANT TO CALIFORNIA CORPORATIONS CODE SECTIONS 25501, 25401, AND 25504

(Against Defendants, BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RNC, LDD, EEI, EENI, EEM, ALABANZA, INC., VENTO; GRACE, ZELEZNAK, ZPM, KWR, Z-LOFT, RDB, ZELTOR, LCC, VI, BERRY, VFT, and DOES 1-100)

275.  Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 274, inclusive, as though fully set forth herein.

276.  Defendants, at the time of acts alleged herein, materially assisted in the perpetration of the Enterprise and fraud upon the Plaintiffs and profited as a result of the actions and omissions committed as part of the Enterprise.

277.  Plaintiffs have been damaged in an amount to be proven at trial. Therefore, Plaintiffs seek an Order of this Court for all appropriate available remedies under California Corporations Code §§ 25501, 25401, and 25504.

278.  WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs and against Defendants as hereinafter set forth.

**XXII.  COUNT 18:  RESCISSION OF SALE OF SECURITIES NOT QUALIFIED FOR SALE AND RESTITUTION OF CONSIDERATION PAID PURSUANT TO CALIFORNIA CORPORATIONS CODE SECTIONS 25503, 25102(F), AND 25110**
(Against Defendants, BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RNC, LDD, EEI, EENI, EEM,  KWR, Z-LOFT, RDB, ZELTOR, LCC, and DOES 1-100)

279.  Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 278 inclusive, as though fully set forth herein.

280.  Defendants offered and sold, or otherwise participated in the offer and sale, to Plaintiffs and investors a total of approximately $6,900,000.00 of promissory notes and membership interests in the various entities.  Defendants were the issuers of the investments and engaged in the trading of such securities.

281.  The sales constituted issuer transactions in that it was part of an initial offering of membership interests for capitalization purposes for the various entities and the issuers directly benefitted from Plaintiffs' investments and received a portion of the investments as the issuer of the security.  At the time of Plaintiffs' acquisitions and investments, the sales were subject to qualification, was not exempt from qualification,

1   and was not, and to the date of this Complaint, has not been qualified as any kind of

2   securities transaction with the Commissioner of Corporations.

3       282.  As a result of the above-described acts, Defendants are liable to Plaintiffs,

4   who are entitled to and hereby do, rescind the above-described purchases.  Plaintiffs

5   will tender before entry of judgment to Defendants their promissory notes and

6   membership interests in the above-described security as purchased from Defendants.

7       283.  Plaintiffs are informed and believe that the consideration given for the

8   securities herein may not be capable of being returned in that Defendants allowed some

9   of the projects to be lost  to foreclosure, gave deeds in lieu of foreclosure, and/or

10  because the investment consideration was used to purchase property for an

11  over-inflated and above fair market value in order to benefit Defendants.  The purchase

12  of the Property at issue for the over-inflated and above fair market valuation constituted

13  fraud upon the Plaintiffs and resulted in the distribution of ill gotten gains to Defendants.

14  Further, there are multiple outstanding loans against the property and certain

15  noteholders have intimated that further foreclosure proceedings would pursue.

16      284.  Plaintiffs have been damaged in an amount to be proven at trial.  Therefore,

17  Plaintiffs seek an Order of this Court for all appropriate available remedies under

18  California Corporations Code §§ 25503, 25102(f), and 25110.

19      285.  WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs and against

20  Defendants as hereinafter set forth.

21

22  **XXIII.  COUNT 19:  JOINT AND SEVERAL LIABILITY OF MANAGEMENT**

23  **PRINCIPALS AND MATERIALLY AIDING PERSONNEL PURSUANT TO**

24  **CALIFORNIA CORPORATIONS CODE SECTIONS 25503, 25102(F), AND 25110**

25  (Against Defendants, BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RNC, LDD, EEI,

26  EENI, EEM, ALABANZA, INC., VENTO; GRACE, ZELEZNAK, ZPM,  KWR, Z-LOFT,

27  FCC, RDB, ZELTOR, LCC, VI, BERRY, VFT, and DOES 1-100)

28                              /////

286.  Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 285, inclusive, as though fully set forth herein.

287.  Defendants and/or their related companies, at the time of acts alleged herein, materially assisted in the perpetration of the Enterprise and fraud upon the Plaintiffs and other putative investors.

288.  Based on information and belief, Defendants have conducted similar transactions with other investor groups to further perpetrate the fraudulent Enterprise discussed herein.

289.  WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs and against Defendants as hereinafter set forth.

## XXIV.  COUNT 20: ACCOUNTING

(Against Defendants, BUCHHOLZ, FISCHER, SOLOMON CAPITAL, RNC, LDD, EEI, EENI, EEM, ALABANZA, INC., VENTO; GRACE, ZELEZNAK, ZPM,  KWR, Z-LOFT, FCC, RDB, ZELTOR, LCC, VI, BERRY, VFT, and DOES 1-100)

290.  Plaintiffs re-allege and incorporate by reference Paragraphs 1 through 289, inclusive, as though fully set forth herein.

291.  Despite the duty and requests to do so, Defendants have not provided Plaintiffs with full, complete, and accurate accountings of transactions related to Plaintiffs' investments.

292.  Plaintiffs are entitled to full, fair, and accurate accountings.

293.  Without such accountings, Plaintiffs are unable to ascertain what sum if any is due on their notes and/or investments and from whom as the information and documents are in the custody and control of Defendants. Full and fair accountings of all income, assets, expenses, liabilities and distributions related to the investments and projects are necessary to determine what sums are due to whom and from whom.

294.  WHEREFORE, Plaintiffs pray for judgment in favor of Plaintiffs and against

1  Defendants as hereinafter set forth.

2

3  **PRAYER FOR RELIEF**

4

5  Wherefore, Plaintiffs, by and through their attorneys, pray for judgment against

6  Defendants, and each of them, as follows:

7  1.  For rescission of the purchase and recovery of investment capital as the

8  original consideration paid for the securities at issue;

9  2.  For interest as according to fact, proof, and/or law;

10  3.  For actual damages incurred to be proven at trial with interest thereon;

11  4.  For costs of suit herein incurred;

12  5.  For recovery of attorneys' fees;

13  6.  For punitive damages;

14  7.  For a permanent injunction preventing Defendants from further profiting

15  from or disgorging said profits from their fraudulent Enterprise;

16  8.  For full, fair, accurate accountings; and

17  9.  For such other and further relief as the Court may deem proper.

18

19  Dated: July 23, 2008

20  _____
    Jeffrey M. Forster, Attorney for Plaintiffs

21  Dated: July 23, 2008

22  _____
    Steven R. Levy, Attorney for Plaintiffs

23  **DEMAND FOR JURY TRIAL**

24  **Plaintiffs hereby demand a trial by jury.**

25

26  Dated: July 23, 2008

27  _____
    Jeffrey M. Forster, Attorney for Plaintiffs

28

    Dated: July 23, 2008

    _____
    Steven R. Levy, Attorney for Plaintiffs

JS 44 (Rev. 12/07) (cand rev 1-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

Yu-Sze Yen, et al.

## DEFENDANTS

Ronald Buchholz, et al.

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Jeffrey M. Forster
Steven R. Levy
160 W. Santa Clara St., Ste. 1100
San Jose, CA 95113

Attorneys (If Known)

C08   03535   **PVT**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☒ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury— Med. Malpractice
☐ 365 Personal Injury— Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities— Employment
☐ 446 Amer. w/Disabilities— Other
☐ 440 Other Civil Rights

### PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence
Habeas Corpus:
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

### FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### IMMIGRATION
☐ 462 Naturalization Application
☐ 463 Habeas Corpus – Alien Detainee
☐ 465 Other Immigration Actions

### BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause: Multiple Causes of Action:  Fraud, Breach of Contract, SEC Violations, Rico Violations, etc.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 6,900,000 Approximate
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE". (1) C08 02248 RMW  (2) C08 03410 RMW

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)
☐ SAN FRANCISCO/OAKLAND   ☒ SAN JOSE

DATE
July 21, 2008

SIGNATURE OF ATTORNEY OF RECORD
Jeffrey M. Forster

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.     (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.     Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.     Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.     Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.     Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.     Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**          Example:          U.S. Civil Statute: 47 USC 553
                                                                                   Brief Description: Unauthorized reception of cable service

**VII.     Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.     Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.
**Date and Attorney Signature.** Date and sign the civil cover sheet.